**EDWARDS v. MAX THIEME CHEVROLET CO. et al.**

**No. 5978.**

Court of Appeal of Louisiana. Second Circuit.

May 29, 1939.

Rehearing Denied June 29, 1939.

Writ of Certiorari and Review Denied Oct. 30, 1939.

Coleman & Morgan, of Shreveport, and A. A. Moss, of Winnfield, for appellants.

Casimir D. Moss, of Winnfield, for appellee.

DREW, Judge.

This is a suit against the Max Thieme Chevrolet Company of Winnfield, Louisiana, and the General Motors Acceptance Corporation, seeking damages in the amount of $750 for the illegal conversion of a truck and trailer. The material allegations of plaintiff's petition are set forth in articles 20 and 23 as follows:

"Petitioner especially avers and alleges that at some time in May of 1938, prior to May 24, 1938, the exact date of which is not known by petitioner, the defendants herein, Max Thieme, trading as Max Thieme Chevrolet Company, and General Motors Acceptance Corporation, did illegally, unlawfully, and with utter disregard of the property rights of petitioners herein, deprive petitioners of their interests and equities in said truck and trailer by converting said truck and trailer to defendants' own use and benefit by selling, conveying and delivering the same to Eddie Bolton, or Bowlin, at the place of business of Max Thieme Chevrolet Company in the Town of Winnfield, Parish of Winn, State of Louisiana.

"Petitioners further allege that the said defendants, in an unlawful effort to collect the small balance due on the purchase price of said truck and trailer, simply converted said truck and trailer to their own use and benefit, and sold the same to Eddie Bolton, or Bowlin, thereby unlawfully depriving your petitioners of their right, title, interest and equity in and to said chattels."

Defendants denied these allegations, and the General Motors Acceptance Corporation further pleaded compensation in the amount of $214, the balance still owed by plaintiff on the truck and trailer.

The lower court rendered the following opinion in the case:

"The plaintiff brings this suit individually and as natural tutrix for her minor children, seeking damages in the sum of Seven Hundred and Fifty Dollars for the alleged conversion of a Chevrolet truck and trailer. The husband, Claude Edwards, now deceased, purchased a 1937 Chevrolet truck and Nabors trailer from the Max Thieme Chevrolet Company on the 3rd day of October, 1936, for the price of $1126.81, with a cash payment of $320.-25, and the balance of the purchase price was evidenced by a note which was secured by a vendor's lien and chattel mortgage against the said truck and trailer. The said Claude Edwards was engaged in the logging business and used the truck in said business and continued to make the installment payments on said truck and trailer until January, 1938, at which time the balance due was $214.00.

"During the month of January, 1938, the truck and trailer was stolen by a person in the employ of Claude Edwards. He took the truck to Arkansas, where it was later located by the GMAC. The GMAC then returned the truck and trailer in March,—along about the 15th of March,—to the Max Thieme Chevrolet Company to be delivered to Claude Edwards upon the condition of his complying with certain conditions.

"The Max Thieme Chevrolet Company notified Claude Edwards of the fact that Max Thieme Chevrolet Company had possession of the truck and trailer, this message having been received on the 16th or 17th of March, and on the 19th day of March, while working, Claude Edwards was killed in the Parish of LaSalle.

"In about eight or ten days after the death of Claude Edwards, the plaintiff called at the Max Thieme Chevrolet Company and inquired from the manager, Mr. Williams, about the truck and trailer. She advised Mr. Williams that she wanted to pay for the truck and trailer and have it to haul logs and help support her and her minor children. Williams informed her that he would have to take the matter up with the GMAC or the finance company which held the note. She requested Williams to notify her as soon as he heard from the finance company as to what to do, insisting that she desired to make full payment and receive the truck and trailer. After this conversation she became sick and never returned to the Max Thieme Chevrolet Company for a number of weeks and she was never notified by Mr. Williams, the manager of the Max Thieme Chevrolet Company, as to what the desire of the finance company was; but after considerable time she went to the garage and inquired for the truck, as she wanted it, and she was informed that the truck had been delivered and sold to Eddie Bowlin, who then had the truck at Logansport, Louisiana.

"The GMAC handled the note on this truck and trailer for the Max Thieme Chevrolet Company and it received, according to the statement of the bookkeeper, all the indebtedness against this except $214.-00, balance due. The agent of the GMAC admitted that he sold the note representing the balance due on this truck and trailer to Eddie Bowlin without recourse. That before selling the note to Eddie Bowlin they had taken the matter up with the Max Thieme Chevrolet Company, who sold the truck and trailer originally and who was an endorser on the note, about the trade; and the Max Thieme Chevrolet Company's manager informed the GMAC agent it would be o. k. to make the same, provided the note was transferred without recourse. The GMAC agent then sold the note to Eddie Bowlin without recourse and gave him an order directed to the Max Thieme Chevrolet Company to turn over and deliver to the possession of Eddie Bow-lin the Edwards truck and trailer. He then presented this letter to the Max Thieme Chevrolet Company at Winnfield, and in compliance with said letter, the Max Thieme Chevrolet Company transferred the truck and trailer to the said Bowlin.

"Both the defendants GMAC and the Max Thieme Chevrolet Company admit that they did not receive the consent of the plaintiff, Mrs. Edwards, in making this delivery; that they had received no order from her and that they made this delivery without due process of law.

"Now, the first consideration of the court is to determine whether such statement of facts constitutes an unlawful conversion. We think the above facts constitute an unlawful conversion on the part of both defendants. In 26 R.C.L. 1098, conversion is defined as follows:

" 'Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession, permanently or for an indefinite time. The act must be essentially tortious, but it is not essential to conversion sufficient to support the action of trover that the defendant should have the complete manucaption of the property, or that he apply the property to his own use, if he has exercised dominion over it in exclusion of, in defiance of, or inconsistent with the owner's right.'

"Also, in 26 R.C.L., 1117, Section 28, describing conversion, it says:

" 'The wrongful detention or withholding of possession of personal property from the owner under a claim of title inconsistent with that of the latter, and denying the right of the owner to his property, is unquestionably a conversion of the same for which an action of trover lies, particularly when such detention occurs after demand for possession of the property has been made by the owner. This is true whether the defendant bases his refusal on his own right, or assumes to act for another.'

"Also, in 26 R.C.L., 1138, Section 51, it reads:

" 'One who aids and abets another in keeping property from its rightful owner is guilty of conversion, and the fact that

he acted as agent for another is no excuse.'

"In view of these definitions of conversion, the court is of the opinion that both the GMAC and Max Thieme Chevrolet Company are guilty of unlawful conversion. It is true the GMAC did not sell the truck and trailer to one Bowlin, but this defendant did secure this truck and place it in the Max Thieme Chevrolet Company subject to its orders. It had a legal right to sell and transfer the note to Mr. Bowlin, and if the GMAC had stopped at this point it certainly would have been acting within its own legal rights. But when this defendant addressed a letter to the Max Thieme Chevrolet Co., instructing said company to deliver this truck and trailer to Mr. Bowlin, it then went beyond its authority, and this act, in our opinion, constituted the taking of the property from the owner without due process of law, and without this order from the GMAC, Mr. Bowlin could never have received possession of the truck and trailer from the Max Thieme Chevrolet Company. And in giving this order it certainly exercised an authority over the truck and trailer that it had no legal authority to do, and it amounts to the same thing as taking the property away from the owner without due process of law and transferring same into the State of Texas.

"As to the Max Thieme Chevrolet Company, it cannot escape liability on the ground that it acted upon the letter of instructions received from GMAC, for this Motor Company sold the truck and trailer to Edwards and they were endorsers on the note, and when they had it in their possession they knew the property belonged to Claude Edwards; and then, too, they had common knowledge of the fact that Claude Edwards was killed and therefore had knowledge and knew that whatever equity existed in this truck and trailer belonged to the widow and minor children of Claude Edwards, and it certainly aided and abetted in the taking of this property from the possession of these plaintiffs by giving their faith and credit to the letter of instructions to it from the GMAC. The Max Thieme Chevrolet Company knew that this truck and trailer belonged to these plaintiffs and knew full well that the GMAC had no lawful right to deliver this truck and trailer to any one without the consent of the plaintiffs, and by so doing it made itself liable, for 26 R.C.L., 1138, Section 51, says:

" 'One who aids and abets another in keeping the property from its rightful owner is guilty of conversion, and the fact that he acted as agent is no excuse.'

"For these reasons we are of the opinion that both the defendants, General Motors Acceptance Corporation and Max Thieme Chevrolet Company, are liable in damages for the conversion.

"Having reached the conclusion that the defendants are liable, the next consideration is the amount of damages. The testimony offered by the plaintiff puts a value on the truck and trailer from $525 to $650. That placed on them by the defendant is from $225 to $300. Mr. Hahn, who is engaged in the finance business in the Town of Winnfield, inspected this truck and trailer along about the first of January, 1938, preparatory to making a loan against same, and he valued the equipment at from $525 to $550. Mr. Hahn is a disinterested party from either side, while the Chevrolet Company employees connected with the Max Thieme Chevrolet Company had it at much less, somewhere from $200 to $250 as it was in bad condition. Nabors trailers, when new, sell for around $400, and from our common knowledge of affairs, these trailers last for a long period of time. They are not subject to the same depreciation in value that cars and trucks are entitled to, and we are of the opinion that the full value of the trailer at the time of the conversion would be $200. From a careful consideration of all the testimony in connection with our knowledge of trucks, we are of the opinion that the truck itself was worth $275 at that time. This truck was about seventeen months old and a good deal of the time it had not been used. We find that the Max Thieme Chevrolet Company had repaired trucks of this age and had sold them for as high as $800, with trailers, and we have, therefore, established the value of the truck to be $275, making the full equipment being worth the sum of $475 at the time of the conversion.

"Now, at the time of the conversion there was $214 due the defendant GMAC on this truck, and we think that they are entitled to this deduction from the $475, which would leave $261 that the plaintiff would be entitled to as a judgment against both defendants in solido. The defendant claimed that this truck was otherwise mortgaged and offered copies of other chattel mortgages in evidence to show that the equipment was burdened with other mort-

gages. This was objected to by counsel for the plaintiff for various reasons, among which was one that it was beyond the pleadings of the defendant, as the defendant had failed to plead there was any mortgage against the equipment except the $214, the unpaid portion on the purchase price. The testimony was admitted subject to the objection. We think the objection is good and the evidence is not admissible because it is not covered by the pleadings. If such testimony was admissible, there is no testimony to show that the mortgages in Texas are in existence and have not been paid. The mortgage to the Max Thieme Chevrolet Company was only given by Claude Edwards himself, and we doubt the validity of this mortgage for the reason that at the time it was given Claude Edwards was married and had a wife and children and this was the only truck he owned and he used it for the means of making a living for his wife and family; and it would be necessary that his wife would have to join in the mortgage. As stated, we believe the objection of the plaintiff's attorney is good, and sustain the objection.

"Now, the defendant's attorney raised objections to plaintiff attempting to prove the value of the property at the time of the conversion, for the reason it was not alleged in plaintiff's petition. It is true there is no specific allegation in plaintiff's petition as to the value of the car at the time of this conversion, but we think there are allegations sufficient to admit the proof. In paragraph 9 of plaintiff's petition there is an allegation that Claude Edwards purchased a new Chevrolet truck of 1937 model in October, 1936, for the sum of $1126.-81, which gives you the value of the truck at the date he purchased it. In paragraph 24 of the petition he seeks damages for the widow for loss and depreciation of an undivided one-half interest in and to the truck and trailer, and he alleges there that this one-half interest is $375. He also, in the same paragraph, makes the same allegation as to the minors,—that they are entitled to $375 for the loss and depreciation of their half interest. From reading this paragraph, you can readily determine that he is not seeking any exemplary damages or any other damages except for the loss of the value of this truck, and he has specifically stated what this damage or loss is; and there is no other inference that you could draw from paragraph 24 than that he intended and did in substance allege the truck and trailer to be worth $750 at the time of the conversion. Taking the reading of paragraphs 9 and 24 of the plaintiff's petition, the court is of the opinion the allegations are sufficient to prove the value of the equipment at the time of this conversion.

"For these reasons, there will be judgment of this Court for the plaintiff in the full sum of $261.00, with 5% interest from and after the date of this judgment, in solido, against both defendant General Motors Acceptance Corporation and defendant Max Thieme Chevrolet Company.

"F. E. Jones, Judge."

From a signed judgment in accordance with the opinion, defendants prosecute this appeal.

Plaintiff has answered the appeal, complaining of the judgment of the lower court in the following respects: (1) That interest was allowed from date of judgment instead of from judicial demand; and (2) that the judgment erroneously allowed General Motors Acceptance Corporation compensation or set-off against the value of the truck of the balance due by plaintiff on the purchase price.

There is very little dispute over the facts in the case, and the lower court has correctly found them in its written opinion quoted above. We are of the opinion the law applicable has been properly applied as to the question of conversion. We might add, however, that in so far as defendant Max Thieme was concerned, he did more than aid and abet the General Motors Acceptance Corporation. He was interested in having Bowlin pay off the Edwards note for the reason he was an endorser to GMAC and liable on the note. He agreed to the trade made by GMAC with Bowlin only on condition that the note be transferred without recourse, thereby relieving him from liability thereon.

Defendants seriously contend here that there was an implied consent to the transfer of the truck by plaintiff. The evidence does not bear out this contention. Plaintiff had called at Max Thieme's place of business and demanded the truck, when she was informed that she could not get it until General Motors Acceptance Corporation was heard from. When she returned some time later she was informed that the truck had been sold and delivered to Mr. Bowlin and that he had taken it away.

This testimony is not contradicted and clearly does away with the theory of consent either express or implied.

Defendants reurge here their contention that the pleadings did not justify the admission of testimony to prove the value of the truck and trailer. The lower court has, in our opinion, correctly disposed of this contention.

They further complain of the value of the truck and trailer as found by the lower court. The evidence on this question fully supports the court's finding.

Plaintiff in her petition prayed for legal interest from judicial demand. The lower court allowed interest only from date of judgment. The judgment is erroneous in this respect. Interest should have been allowed from judicial demand. Act No. 206 of 1916, Section 1. An act of illegal conversion is a tort and comes under the above cited act.

The lower court was in error in allowing defendant General Motors Acceptance Corporation compensation or offset against the value of the truck in the sum of $214. The testimony and the answer of GMAC clearly show that it had sold the note representing part of the purchase price formerly held by it against plaintiff and the truck and trailer, and at the time this suit was filed and when tried GMAC did not claim that plaintiff was indebted unto it in any amount. It likewise held no claim or mortgage of any kind against the truck. The note and mortgage against the truck were at that time owned by a Mr. Bowlin, who is not a party to this suit and in no way connected with General Motors Acceptance Corporation. If Bowlin is a holder in due course of the note, a question not before us, and should sue and collect from plaintiff on the note, and the judgment as rendered below be allowed to stand, plaintiff would have to pay the note twice. Compensation can take place only when two persons are indebted to each other. Article 2207, Revised Civil Code. That situation does not exist between plaintiff and General Motors Acceptance Corporation. The conversion of the truck and trailer by GMAC was its tort for which it is liable for the damage caused thereby. If under any circumstance it could plead compensation in an action in tort against it, we are certain it cannot plead compensation of a debt owed by a plaintiff to a third person.

 The quantum of damages allowed in cases of illegal conversion is the value of the equity owned by plaintiff in the thing converted. This rule applies, however, only to the equity as between the owner and the converter, and cannot be binding on or affect in any way the rights of one not a party to the suit.

We therefore conclude that the judgment of the lower court must be amended by increasing the amount of the award to plaintiff from $261 to $475, with interest at the rate of five per cent per annum from judicial demand until paid, instead of from date of judgment; and for all costs. It is therefore so ordered, adjudged and decreed.