217 So.2d 177

Joseph H. KAPLAN et ux.

v.

ASSOCIATES DISCOUNT CORPORATION.

No. 49131.

Dec. 16, 1968.

LeDoux R. Provosty, Jr., Provosty, Sadler & Scott, Alexandria, for defendant-relator.

Bernard Kramer, Alexandria, for plaintiffs-respondents.

HAMLIN, Justice:

We directed certiorari to the Court of Appeal, Third Circuit, in order that we might review its judgment which reversed the judgment of the trial court and remanded the matter for a determination of damages. Art. VII, Sec. 11, La.Const. of 1921; 206 So.2d 537; 251 La. 1057, 208 So. 2d 326.

The question presented for our determination is whether plaintiffs, who were

owners of the herein involved motor vehicle under an imperfect title, are entitled to damages from defendant which had the said vehicle seized under executory process and sold at Sheriff's Sale to satisfy the unpaid portion of a chattel mortgage. The issue is that of superiority of rights.

The Court of Appeal correctly summarized the facts as follows:

"Edward (Hess) Curry was the owner of a 1962 Cadillac. He mortgaged that Cadillac in favor of Commercial Securities Company [a Certificate of Title from the State of Louisiana Department of Revenue —Motor Vehicle Division—issued March 5, 1964, recites that there was a first mortgage on the vehicle in favor of Commercial Securities Co., dated November 19, 1963, in the amount of $3270.96] in 1963 and received a title certificate in March, 1964, showing that mortgage. On May 28, 1964, Curry executed a second chattel mortgage in favor of defendant, Associates Discount Corporation, to secure a debt in the sum of $2,260.10. [The trial judge found as a fact that there was a bearer note and mortgage in favor of Auto Merchandisers; the note and mortgage were assigned to Associates Discount Corporation.] In March, 1965, Curry satisfied the first mortgage held by Commercial Securities and had that mortgage erased from the title certificate. That same month Curry told defendant he had lost the original title, and so he applied for and received a 'duplicate' title certificate from the Motor Vehicle Division in Baton Rouge showing a clear title unencumbered by any mortgages. Later, on July 2, 1966, Curry, acting through the name 'Auto Merchandizers,' sold the Cadillac to Mr. Kaplan, a plaintiff here, and the price was paid a short time thereafter. [The record reflects that Kaplan made a down payment of $200.00 on July 6, 1966, and paid the full balance of $1,525.00 on the purchase price of said Cadillac by check to Auto Merchandisers on July 12, 1966.] Curry, however, did not deliver to Mr. Kaplan a title certificate on the Cadillac until sometime in August, and the certificate which was delivered was not transferred according to law.

" * * * Curry * * * procured a duplicate title certificate, and then negotiated the original title to plaintiffs. Curry endorsed in blank the original title (which showed that the first mortgage was satisfied but did not show the second mortgage) and delivered that to plaintiffs in August, 1966. The endorsement was not complete and was not notarized and witnessed, as required by the Vehicle Certificate of Title Law (R.S. 32:701–32:734). In addition, plaintiffs failed to file an application for a certificate of title in their own name (or at least in Mr. Kaplan's name) within five days after delivery of the vehicle, as required of him in R.S. 32:707. * * * it is not known on what date Associates Discount did in fact register its mortgage with

the Motor Vehicle Division. The duplicate title issued Curry in March, 1965, did not show defendant's chattel mortgage.

"Curry defaulted on his payments to the defendant, and, therefore, on August 18, 1966, the defendant company executed on its chattel mortgage and had the Cadillac seized from the possession of plaintiffs and sold at a sheriff's sale. Upon seizure of the automobile, the sheriff received from

Baton Rouge a certificate, dated September 7, 1966, showing the defendant's mortgage as the only encumbrance upon the title, and that Curry was the record owner of the car. [The date of the mortgage was recited as May 28, 1964; the amount was $2,660.10.] * * * this mortgage was never noted on the face of any certificate of title as required in R.S. 32:706 and 32:-710." [1]

1. "On and after December 15, 1950, except as provided in R.S. 32:705 and 32:-712, no person buying a vehicle from the owner thereof, whether such owner be a dealer or otherwise, hereafter shall acquire a marketable title in or to said vehicle until the purchaser shall have obtained a certificate of title to said vehicle; provided, however, that neither the foregoing nor any other provisions of this Vehicle Certificate of Title Law shall be construed to have the effect of delaying, suspending or preventing the negotiation of a note secured by a chattel mortgage on a vehicle from being complete until the purchaser shall have obtained a certificate of title to said vehicle, the actual intention and effect of this law being that such a chattel mortgage shall be complete and effective as to all persons from the time of its execution by the parties if the mortgage is noted on the face of the certificate of title for such vehicle by the commissioner within fifteen days after such date of execution. Provided that in the case of an authentic act the time of execution shall be the date of execution before a notary public or other duly authorized officer and if by duly acknowledged private act the date of signing by the parties shall be the time of execution. If the chattel mortgage is not noted on the certificate of title for such vehicle by the commissioner within fifteen days after the date of execution it shall be complete and effective as to all persons from the date of notation of the

chattel mortgage on the face of the certificate of title for such vehicle by the commissioner. * * *" LSA–R.S. 32:-706.

"In order to affect third persons the chattel mortgage must be by authentic act or by private act duly authenticated in any manner provided by law, * * *. Every such mortgage other than those securing floor plan loans shall be effective as against third persons as of the time of its execution by the parties if the chattel mortgage is noted on the face of the certificate of title for such vehicle by the commissioner within fifteen days after such date of execution. Provided that in the case of an authentic act the time of execution shall be the date of execution before a notary public or other duly authorized officer and if by duly acknowledged private act the date of signing by the parties shall be the time of execution. If the chattel mortgage is not noted on the face of the certificate of title for such vehicle by the commissioner within fifteen days after its execution it shall be effective as to all persons from the date of notation of the chattel mortgage on the face of the certificate of title for such vehicle by the commissioner, and the same shall be superior in rank to any privilege or preference arising subsequently thereto. * * *" LSA–R.S. 32:710, subd. B.

LSA–R.S. 32:707 provides in part: "A. The purchaser must in all cases file an application for certificate of title with-

The record reflects that in Suit No. 67,981 of the Docket of the Ninth Judicial District Court, Parish of Rapides, plaintiff Joseph H. Kaplan filed a petition for writ of sequestration, and an order for issuance of the writ as prayed for was signed on September 6, 1966. The record also reflects that John B. Honeycutt, Sheriff & Tax Collector of Rapides Parish, secured from the Motor Vehicle Division a certificate dated September 7, 1966, showing defendant's mortgage in the amount of $2,-660.10 granted by Curry on May 28, 1964, for use in the case of Associates Discount Corporation vs. Edward H. Curry, Sr., the proceedings for executory process. On September 14, 1966, the Cadillac was sold by said Sheriff to Associates Discount Corporation for the sum of $900.00. After the filing of pleadings by Associates Discount Corporation, the writ of sequestration was dissolved on October 31, 1966, as having been wrongfully issued; Kaplan was ordered to pay Associates Discount Corporation $200.00 as damages for attorney's fees. No appeal was taken by Kaplan, and by

joint motion filed November 16, 1966, Kaplan and Associates Discount Corporation prayed that the cash bond of $1,000.00 previously posted by Kaplan be withdrawn. The trial judge ordered the Clerk of Court to pay out $1,000.00—$800.00 to Kaplan, and $200.00 to Associates Discount Corporation as damages for the wrongful issuance of the writ of sequestration, supra.

The present suit for damages was instituted on November 2, 1966. The Kaplans alleged that they had been permanently deprived of the possession of their 1962 Cadillac automobile and had suffered humiliation and embarrassment by the conduct of the defendant. Mr. Kaplan asked for damages in the sum of $5,750.00; Mrs. Kaplan prayed for $2,500.00.

The trial court dismissed plaintiffs' suit; it found that at the time of the sale of said Cadillac by Curry to Joseph H. Kaplan, the chattel mortgage of Associates Discount Corporation was in full force and effect and legally enforceable by defendant, Associates Discount Corporation.[2]

---

in five days after the delivery of such vehicle; * * *.

"B. * * * and if a certificate of title has previously been issued for such vehicle in this state, shall be accompanied by said certificate of title duly endorsed with sale and assignment or duly endorsed with sale and assignment and resale and reassignment, unless otherwise provided for in this Chapter."

2. The trial court concluded: "The court does not find in this case any tortious conversion of plaintiffs' automobile by de-

fendant. The court does not find 'any distinct act of dominion wrongfully exerted over plaintiffs' personal property in denial of or inconsistent with their rights therein, such as a tortious taking of their property. Nor does the court find any taking of the property from the owner 'without due process of law." See Edwards v. Max Phime [Thieme] Chevrolet Company [La.App.], 191 So. 569.

"The court notes in passing that plaintiffs in the instant suit have not made any effort, by judicial process, to seek

As stated supra, the Court of Appeal reversed the judgment of the trial court. It felt that plaintiffs' rights should be protected, and that defendant's redress must be sought from Curry, who to the Court appeared to be the real wrongdoer.[3]

Herein, defendant contends that whereas plaintiffs might have obtained ownership of said Cadillac by virtue of the sale to them by Curry, they did not obtain rights as to third parties until they complied with the Certificate of Title Law. It urges that because the object of this case is a motor vehicle, the dispute has to be resolved in the light of the motor vehicle registration laws.

Plaintiffs contend that the judgment of the Court of Appeal is correct and should be affirmed. They urge that this Court determine the amount of damages they allegedly suffered.

We find that the sale of the Cadillac from Curry (or Auto Merchandisers) to Joseph H. Kaplan was a completed sale and as between them was valid. However, the Kaplans did not acquire a perfect or marketable title to said automobile since they did not comply with the Certificate of Title Law, supra. See, Gooch v. Dick Bohn Ford, Inc., La.App., 140 So.2d 903. At the time the Kaplans acquired the Cadillac, July 2, 1966, Associates Discount Corporation, a third party, held a chattel mortgage on the car. It is true that Associates Discount Corporation's mortgage was probably not recorded at the time the sale was executed; however, it is also true that the Kaplans themselves made no attempt to discover if the Cadillac was mortgaged. It is also true that Associates Discount Corporation was not aware of the sale by Curry to Kaplan at the time of its execu-

any redress from Curry who certainly is to blame for the predicament in which the plaintiffs now find themselves.

"Equity principles as well as the law favor the defendant. It has been said that 'where the prejudicial situation has resulted from the wrongful act of a third person, the decision must be against the party whose conduct made possible the wrongdoers act, breach of trust, fraud, or negligence'. But even if this principle is not applicable and even if we assume that Mr. Kaplan is equally free from fault as is defendant, Associates Discount, then another principle favors the defendant, that being 'equity which is prior in time is better in right'. It has been said that 'as between equities otherwise equal, he who has the prior equity in point of time is entitled to a like priority

in point of right'. 27 Am.Jur.2nd. 'Equity' Section 149."

3. The Court of Appeal stated: "It is our view that a property owner's right of possession of his property is superior to the rights of a mortgagee of that property unless the owner's rights somehow become subject to the mortgage (Cf., C.C. Art. 488). Since plaintiffs knew nothing of the prior mortgage, it cannot be said that they intended to subject their rights to that mortgage. Therefore, unless plaintiffs had some sort of constructive or legal notice of the mortgage, which will give the mortgagee a superior claim to or a priority upon the Cadillac, then the seizure of the automobile by the defendant from the possession of the plaintiffs was wrongful and constitutes conversion."

tion. However, the record does reflect a compliance (although belated) with the Certificate of Title Law, because, as shown by the certificate issued to the Sheriff of Rapides Parish, supra, dated September 7, 1966, Associates Discount Corporation's mortgage was recorded before the Sheriff's Sale of September 14, 1966 under executory process.

When the Cadillac was seized from the Kaplans on August 29, 1966, under executory process on August 18, 1966, they had ample time to file pleadings other than the petition for writ of sequestration. They could have intervened in the executory proceedings and claimed a right to the proceeds of the Sheriff's Sale, or they could have attempted to enjoin the proceedings on the basis of their ownership.[4] After hav-

ing the writ of sequestration issued, the Kaplans did nothing further. As stated supra, the writ of sequestration was dissolved on October 31, 1966, as having been wrongfully issued.

■ Under such circumstances as are presented herein, we do not find that plaintiffs are entitled to recover damages from the defendant, a third party holding a valid mortgage on the car and having said mortgage recorded prior to the time of the Sheriff's Sale.[5]

Neither plaintiffs nor defendant exercised a timely or proper compliance with the Certificate of Title Law, supra. However, defendant committed no tortious conversion of the vehicle; it was in court first in point of time. We conclude that its rights were superior to those of plaintiffs.

4. "A third person claiming ownership of, or a mortgage or privilege on, property seized may assert his claim by intervention. If the third person asserts ownership of the seized property, the intervention may be filed at any time prior to the judicial sale of the seized property, and the court may grant him injunctive relief to prevent such sale before an adjudication of his claim of ownership.

"* * * *

"An intervener claiming the proceeds of a judicial sale does not thereby admit judicially the validity, nor is he estopped from asserting the invalidity, of the claim of the seizing creditor." Art. 1092, C.C.P.

"When property sold or otherwise alienated by the original debtor or his legal successor has been seized and is about to be sold under executory process, a person who has acquired the property subject to the mortgage or privilege thereon and who has not assumed the payment

of the indebtedness secured thereby may:

"(1) Pay the balance due on the indebtedness, in principal, interest, attorney's fees, and costs;

"(2) Arrest the seizure and sale on any of the grounds mentioned in Article 2751, or on the ground that the mortgage or privilege was not recorded, or that the inscription of the recordation thereof had perempted; or,

"(3) Intervene in the executory proceeding to assert any claim which he has to the enhanced value of the property due to improvements placed on the property by him, or by any prior third possessor through whom he claims ownership of the property. This intervention shall be a summary proceeding initiated by a petition complying with Article 891." Art. 2703, C.C.P.

5. It is to be noted that plaintiffs did not rely on the faith of the public records.

For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, is reversed and set aside. The judgment of the trial court is affirmed. All costs to be borne by plaintiffs.