248 So.2d 617 (1971)
John HAMILTON, Plaintiff-Appellee,
v.
TRAVELERS INDEMNITY COMPANY, Defendant-Appellant.
No. 3417.
Court of Appeal of Louisiana, Third Circuit.
May 28, 1971.
*618 Holt & Woodley, by James E. Williams, Lake Charles, for defendant-appellant.
Payton R. Covington, Lake Charles, for plaintiff-appellee.
Before FRUGE, CULPEPPER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Plaintiff, who at the time pertinent to this case was engaged in the household moving business, purchased a 1968 Chevrolet Impala Station Wagon at a price of $4,456.68. He obtained insurance on the automobile, including $100.00 deductible collision coverage, from defendant. For some six weeks plaintiff used his new automobile extensively for both business and private purposes, driving it nearly 6,000 miles in that span of time. Then, on September 7, 1968, while plaintiff's wife was operating the automobile with plaintiff and others as passengers, it was involved in a one car accident in which it overturned and suffered extensive damage.
A few days after the occurrence, plaintiff telephoned one Don Gates, an adjuster for defendant, to report the accident. Plaintiff informed Mr. Gates that he considered the automobile to be a total loss and that he did not wish to have it repaired. Mr. Gates replied that he would have to obtain an appraisal of the damage and would contact plaintiff when he had such information. The appraisal was made by LeBlanc Appraisal Service and showed the damage to be valued at $1719.10. Nevertheless, because plaintiff persisted in his refusal to allow the repair of the vehicle, Mr. Gates agreed to consider it a total loss. He then offered plaintiff the sum of $3,100.00, less the $100.00 deductible, in settlement of his claim. It is at this point that the difficulty arises.
Mr. Gates maintained that plaintiff orally agreed to accept his offer and that he sent plaintiff a proof of loss form and instructed him to sign and return it along with the title to the vehicle. Plaintiff insisted that he never agreed to accept that sum. Both testified that plaintiff never sent a proof of loss form or title to defendant. It is evident from this testimony that whether or not an oral agreement was reached, the parties contemplated a written contract to consummate the transfer of ownership of the vehicle from plaintiff to defendant, and that no written instrument was ever executed by plaintiff. Under these circumstances our jurisprudence is clear that plaintiff was never divested of ownership. West v. Carbone, La.App., 150 So.2d 37; Stewart v. Schmauss, La.App., 191 So.2d 882; Sterkx v. Gravity Drainage District No. 1 of Rapides Parish, La.App., 214 So.2d 552; writ refused, 252 La. 964, 215 So.2d 130.
Negotiations continued between the defendant, represented by Mr. Gates, and plaintiff and his attorney, and ultimately defendant offered plaintiff the sum of $3500.00 for his vehicle. That offer was not accepted either, and on November 4, 1968 plaintiff's attorney made written demand on defendant for the return of the automobile.
In the meantime, however, defendant had taken the liberty to remove the vehicle from the Louisiana Paint and Body Shop, where it had been stored following the accident, and sell it to Cook's Auto Salvage for $575.00 with the understanding that defendant would transfer the title to Cook's upon receipt of same from plaintiff. Cook's removed the automobile to a body shop in Tyler, Texas and had it repaired. Upon receipt of plaintiff's aforementioned demand letter, Mr. Gates contacted David Cook, owner of Cook's Auto Salvage, and asked him to return the automobile. Cook agreed to do so for a consideration of $2774.11, which defendant paid, and on December 13, 1968 the automobile was delivered to plaintiff's home.
Nevertheless on January 24, 1969 plaintiff filed the instant suit seeking full compensation for what he considered to be the value of the vehicle, and also damages resulting *619 from the illegal seizure and possession of his automobile, loss of business, interest on the financing of the automobile, and expenses incurred in renting replacement automobiles. Defendant reconvened against plaintiff for the $100.00 deductible under the policy of insurance. Following a trial on the merits, the trial court awarded plaintiff damages in the amount of $3,613.27, of which $1954.40 represented the loss value of the automobile, $658.87 represented the cost of auto rental, and $1,000.00 represented plaintiff's inconvenience.
Defendant appealed that judgment to this court but plaintiff did not answer the appeal, the latter being satisfied with the trial court's judgment.
The first issue presented to us is whether there was a conversion of plaintiff's automobile. We think there was.
Conversion includes any act of dominion wrongfully asserted over the property of another in denial of or inconsistent with the owner's rights therein. Importsales, Inc. v. Lindeman, 231 La. 663, 92 So.2d 574; Marcel v. Denton, La.App., 195 So.2d 163; Edwards v. Max Thieme Chevrolet Co., La.App., 191 So. 569. Defendant's actions in removing plaintiff's automobile from its place of storage and selling it to Cook's Auto Salvage, while its ownership was still vested in plaintiff, are well within the above definition of conversion. We therefore concur in the trial court's finding that there was a tortious conversion.
Plaintiff notified the defendant of the accident on September 16, 1968 and the conversion occurred shortly thereafter. The automobile was not returned to plaintiff until December 13, 1968. In the meantime plaintiff was forced to rent automobiles as his business was of a nature that required the extensive use of a vehicle to make contacts with potential customers, etc. That plaintiff made no small use of his automobile is demonstrated not only by his testimony but also by the fact that in the five or six weeks that he owned it before the accident he drove it nearly 6,000 miles, or roughly 1,000 miles per week. He experienced considerable difficulty in making such use of the rented vehicle, however, because of the fact that the charges were computed partly on the basis of the mileage driven and his economic circumstances were such as to prohibit any long distance driving. Further plaintiff was compelled to undergo the inconveniences of fruitless negotiation with defendant, employing counsel, and ultimately, litigation. Considering these factors we are of the opinion that the trial court's award for inconvenience of $1,000.00, although perhaps a bit high, is not manifestly excessive.
The trial judge calculated the loss value of plaintiff's vehicle by subtracting the value of the automobile after the accident, the value of the repairs as estimated by LeBlanc Appraisal Service, and the depreciation, from the original cost of the vehicle. Basically his approach was correct. McMahon v. Manufacturers Casualty Insurance Co., 227 La. 777, 80 So.2d 405; Dumas v. Grain Dealers Mutual Insurance Co., La.App., 204 So.2d 120; Dugas v. Insurance Co. of St. Louis, La.App., 134 So. 2d 634. The details of his calculations, however, are in error.
The above cited cases allowed depreciation of vehicles on the basis of a four year life expectancy where the vehicles were "subjected to ordinary use". In the instant case plaintiff had been driving his automobile, prior to the accident, approximately 1,000 miles per week. Projected over four years this would indicate that he would drive some 208,000 miles. This court can take judicial cognizance of the fact that the average automobile of today will not serve its owner for 208,000 miles. We think, giving plaintiff and General Motors Corporation the benefit of the doubt, that a life span of half that length would be a far more reasonable expectation. Reinforcement for this conclusion is to be found in the testimony of plaintiff's expert witness *620 to the effect that the average life span of an automobile is two years or 65 to 75 thousand miles. Accordingly we shall calculate the depreciation of plaintiff's automobile on the basis of two years life expectancy.
Further we note that the trial judge, while he used the estimate made by LeBlanc Appraisal Service to determine the value of repairs, used the actual price which Cook's Auto Salvage agreed to pay for the wrecked vehicle in determining its value. We think consistency requires that if the appraisal of repair costs is to be used, the wrecked value should also be determined on the basis of the appraisal. LeBlanc Appraisal Service estimated the salvage value of the wrecked vehicle to be $750.00.
We note also that the trial judge, apparently through inadvertent error, used the figure $1709.00 to represent the estimate of repair cost whereas that figure should have been $1719.10 as shown on the appraisal report. That latter figure was accepted by Louisiana Paint & Body Shop at the price for which it would do the repairs. Also, although the testimony was to the effect that plaintiff paid $4345.00 for his automobile and the trial court used that figure in computing damages, we note that the bill of sale to plaintiff, an authenticated act, states the price to have been $4456.68 and we therefore employ the higher figure.
For our purposes, the depreciation of the automobile must be determined from July 29, 1968, the day plaintiff purchased it, to September 7, 1968, the date of the accident; and from October 3, 1968, the date Cook's Auto Salvage obtained the automobile, to December 18, 1968, the day it was returned to plaintiff. Considering the original value of the automobile to have been $4,456.68, the price shown on the act of sale, and applying a life expectancy of two years, we find the depreciation for the first period (40 days) to have been $244.20. For the second period (72 days) it was $439.56.
Applying those figures we find the value of the vehicle upon its return to plaintiff by adding the value of the repairs, $1719.10, to the wrecked vehicle's salvage value, $750.00, and deducting the depreciation from October 3rd to December 13th, 1968, $439.56. This produces a figure of $2,029.45. We then subtract that amount, the depreciation from July 29th to September 7, 1968, $244.20, and the deductible under the insurance policy, $100.00, from the original value of the automobile, $4,456.68, and conclude that plaintiff's loss was in the amount $2083.03.
That sum represents an increase of $128.63 over the trial court's award for loss value of the vehicle. Plaintiff, however, did not ask that his damages be increased in this court and a judgment may not be altered by us in favor of a party who has neither appealed nor answered the appeal. La.Code of Civil Procedure, Art. 2133; Neames v. Fidelity General Ins. Co., La.App., 206 So.2d 575; Southern Produce Co. v. American Ins. Co. of Newark, New Jersey, La.App., 166 So.2d 59, writ refused, 246 La. 863, 167 So.2d 675. Accordingly the excess will be denied.
Plaintiff proved that he incurred expenses in the amount of $692.68 for rental automobiles while being denied the use of his own. Again this represents a slight increase over the trial court's award but we may not allow the increase for the reasons stated above.
In view of the foregoing discussion it is plain that defendant's contention that the damages awarded by the trial court were excessive is completely devoid of merit, and we therefore reject it.
The only remaining objection which defendant has to the trial court's conclusion is embodied in its allegation that the district judge erred in failing to find that the defendant had complied with the terms of the insurance policy. In view of our finding that defendant committed an illegal conversion of plaintiff's vehicle, this contention is without merit and we need not discuss it further. Suffice it to say that *621 our reading of the policy in question reveals no language which would permit a conversion such as occurred here.
For the foregoing reasons the judgment of the trial court is affirmed. Defendant is to pay all costs both in this and in the district court.
Affirmed.