287 So.2d 625 (1973)
Attie LINCECUM et al., Plaintiffs and Appellants,
v.
Udell SMITH et al., Defendants and Appellees.
No. 4376.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1973.
Rehearing Denied January 21, 1974.
Writ Refused March 8, 1974.[1]
Gist, Methvin & Trimble by John W. Munsterman, Alexandria, for plaintiffs-appellants.
Bolen & Roberts by James A. Bolen, Jr., Alexandria, for defendants-appellees.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
*626 DOMENGEAUX, Judge.
This is a suit for damages brought by the plaintiffs Max and Attie Lincecum, as a result of an alleged wrongful conversion of their property by defendants. The undisputed facts are as follows:
On the morning of Easter Sunday, April 2, 1972, plaintiff Mrs. Attie F. Lincecum, let a recently acquired four month old Shih-Tzu puppy and her adult Pekingese out in her unfenced front yard to attend to their morning excretory activities while she dressed. This was a customary activity on her part which she did every morning. When Mrs. Lincecum returned to let the two dogs indoors, only her Pekingese was outside. She began frantically searching for the puppy and, in addition, telephoned several neighbors and the police. Because of an early appointment she was forced to temporarily end the search, but thereafter cancelled the meeting and returned with her daughter and son-in-law who aided in searching the neighborhood and surrounding area. The attempts to find the dog were fruitless.
On Monday, April 3, Mrs. Lincecum stated that she called the offices of all the veterinarians in Alexandria. She spoke with the secretaries, and asked that they keep a lookout for the puppy. A local veterinarian had been treating the puppy for eye infection and plaintiff hoped that the finder might take the dog for medical aid. In addition she called the dog pound and inserted a notice in the daily newspaper that the puppy was missing.
As she had no response by Thursday, April 6, Mrs. Lincecum started calling the veterinarian offices again. It was at this time that she learned from Dr. William Baker that he had treated a small puppy on Sunday, April 2, fitting the description she had given. Doctor Baker told her to contact Udell Smith, a Baptist minister who lived only several houses down from Mrs. Lincecum, regarding the whereabouts of the dog. She immediately called Mr. Smith, one of the defendants in this matter, in an effort to find her puppy. Mr. Smith denied having the puppy and told her that he would tell her where the dog was on the weekend. The next morning Mrs. Lincecum made a theft complaint with the local police department against Mr. Smith.
Thereafter, not hearing from Mr. Smith, plaintiff again called the Smith home on Saturday night. At this time she was told that her local veterinarian, Dr. Dale Turner, knew what had happened to her puppy. She in turn called her veterinarian who informed her that the puppy had been "put to sleep" by a veterinarian in Baton Rouge.
The record further reveals that the son of Udell Smith, Darrell Smith, the other defendant in this matter, found a black fuzzy puppy in his father's front yard on the morning of Easter Sunday, April 2, 1972. The dog wore no collar, rabies tag, or any other identification. Darrell Smith testified that he looked up the highway to see if anyone had let their dog out and at the time might be looking for the animal. Upon examination of the puppy, he found that the dog's eyes were infected and that there was a cut over one of the eyes. Darrell, thinking that the dog had strayed and possibly been hit by a car, took the dog into his father's house, placing the dog in a cardboard box in the bathroom while the family attended church services. His immediate inquiries were limited to asking his family if they knew who owned the dog and examining the morning paper for lost dog notices. After lunch Darrell made arrangements with a local veterinarian, Dr. William Baker, to examine the puppy. The veterinarian's inquiry showed keratitis infection in one eye and corneal ulceration in the other. Darrell left word with the veterinarian that if anyone called about the lost dog he was taking the puppy with him to Baton Rouge and could be contacted at that address or through his father in Alexandria. The decision to take the puppy with him was made after considering that the animal needed further medical treatment and that his mother was very allergic to dog hair and about to enter the hospital for an operation. Before leaving that afternoon *627 he informed his parents to contact him if someone called asking for the puppy.
On Monday morning, April 3, Darrell took the puppy to Dr. Randy Thayer, a veterinarian in Baton Rouge, who informed the defendant that the dog was almost blind and the cost for treating the dog's eyes would be between $200.00 and $300.00 with the prognosis very poor as to restoration of sight. After consulation with and recommendation by Dr. Thayer, Darrell Smith authorized the veterinarian to "put the dog to sleep", which Doctor Thayer did the same day.
Thereafter on Thursday, April 6, Darrell was informed by his family over the telephone that someone had called asking about the dog. His father had been apprehensive and hesitant to tell Mrs. Lincecum about the dog and sought the advice of his son. It was decided that the veterinarian in Baton Rouge should call Mrs. Lincecum's local veterinarian in Alexandria who could tell her what had transpired. This was done and subsequently on Saturday Mrs. Lincecum found out about her puppy by the aforementioned calls to Udell Smith and Doctor Turner.
Mrs. Lincecum and her husband subsequently filed this suit on May 8, 1972, against Udell and Darrell Smith seeking to recover the value of the puppy and damages for embarrassment, humiliation, and mental anguish over the loss of the dog. Following a trial on the merits, the trial court found in favor of defendants holding that:
(1) There was no actionable negligence on the part of defendants,
(2) Defendants did all that was expected of them under the circumstances,
(3) It was not the fault of defendants that plaintiffs suffered their loss.
It was from that judgment that this appeal was entered.
The first consideration of this Court is to determine whether defendants committed acts constituting a wrongful conversion of plaintiffs' property.
The common law tort of conversion has been recognized for well over a century by Louisiana courts as a quasi offense under Article 2315 of the Louisiana Civil Code. Edward Levy Metals, Inc. v. New Orleans Public Belt R. R., 243 La. 860, 148 So.2d 580 (1963); Rosenthral v. Baer, 18 La. Ann. 573 (1866); Hamilton v. Travelers Indemnity Co., 248 So.2d 617 (La.App. 3rd Cir. 1971); Edwards v. Max Thieme Chevrolet Co., 191 So. 569 (La.App. 2nd Cir. 1939).
Conversion is a distinct act of dominion wrongfully exerted over another's property in denial of or inconsistent with the owner's rights therein. Hamilton v. Travelers Indemnity Co., supra; 89 C.J.S. Trover and Conversion § 1 (1955); 18 Am.Jur.2d Conversion § 1 (1965).
In Importsales, Inc. v. Lindeman, 231 La. 663, 92 So.2d 574 (1957), quoting from 89 C.J.S. Trover and Conversion § 3 (1955) it is stated:
"In order to constitute a conversion there must be either some repudiation of the owner's right, or some exercise of dominion over it inconsistent with such right . . ."
The destruction of goods by a positive and tortious act is a conversion. 89 C.J.S. Trover and Conversion § 35 (1955).
"While an intent to convert consummated by some positive act, is necessary to constitute conversion, it is very generally held that it is not essential to conversion that the motive or intent with which the act was committed should be wrongful, or willful or corrupt, . . . It is sufficient if the owner has been deprived of his property by the act of another assuming an unauthorized dominion and control over it. It is the effect of the *628 act which constitutes the conversion. . . it has very generally been held that the question of good faith, and the additional questions or elements of motive, knowledge or ignorance or care or negligence, (emphasis ours) are not involved in actions for conversion." 89 C.J.S. Trover and Conversion, § 7 (1955).
W. Prosser in his Handbook of The Law of Torts 83-4 (3rd Ed.1964) states:
"The intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights . . . Persons . . . exercise acts of ownership over them at their peril, and must take the risk that there is no lawful justification for their acts."
Under the foregoing definitions and applications of the law this court is of the opinion that the actions of Darrell Smith resulted in an unfortunate but, under the law, wrongful conversion.
Despite his probable "good Samaritan" and humanitarian intentions in the beginning regarding this lost, sickly puppy, Darrell Smith did not do in our opinion what the law expected of him under the circumstances. It is evident from the record that any layman would have realized that this puppy of a Pekingese breed was not just a "stray" dog. This is especially true inasmuch as one considers Darrell Smith's background of being a member of his local kennel club. He new or should have known that this dog belonged to someone. Instead his actions were very minimal in finding the owner. He did not inquire about the dog from the neighbors, nor did he call the police, dog pound, or advertise in a newspaper.
Up to this point one might argue that he committed no act of conversion as he exercised no dominion or right of ownership over the dog. He told everyone whom he came in contact with that this in fact was not his dog, but instead one which was lost. It may also be argued, in view of the circumstances as related herein, that Darrell Smith cannot be faulted because he took the puppy with him to Baton Rouge. However, when he authorized the veterinarian to "put this dog to sleep", he asserted both dominion and a right of ownership which he did not legally possess. When he authorized destruction of the puppy there was a complete interference with the owner's rights, and an obvious conversion. It is argued that under the circumstances Darrell's action in authorizing the destruction of the dog was a humanitarian act, but the fact remains that this dog did not belong to defendant, and the dog's life was not in peril.
Louisiana Civil Code, Art. 3422, prescribes the duty upon one who finds lost things.
"Art. 3422. If he, who has found a movable thing that was lost, having caused it to be published in newspapers, and having done all that was possible to find out the true owner, can not learn who he is, he remains master of it till he, who was the proper owner, appears and proves his right; but if it be not claimed within ten years, the thing becomes his property, and he may dispose of it at his will."
Here defendant did only the minimum in finding the true owner. In addition, less than two days passed between the time he found the puppy and the time he authorized its destruction by euthanasia. Under all the facts and circumstances we feel Darrell Smith is liable for a wrongful conversion of plaintiff's property.
However, it is evident that the defendant, Rev. Udell Smith, is not guilty of any act amounting to a conversion. One is not liable for a conversion by another person where he did not direct, advise, participate in, or benefit from it, and he does not bear such a relationship to the latter person as would make him responsible *629 for his act. 89 C.J.S. Trover and Conversion § 77 (1955). It is clear from the record that Udell Smith did not participate, direct, advise, etc. in the conversion.
Having reached the conclusion that defendant, Darrell Smith, is liable, the next consideration is the amount of damages. Plaintiffs allege that the value of the dog is at least $300.00 and that plaintiffs are entitled to the additional sum of $490.00 for the mental anguish, embarrassment, and humiliation which they suffered as a result of losing the puppy.
Ordinarily the damage caused by wrongful conversion is presumed to be the value of the property wrongfully appropriated, plus interest. Importsales, Inc. v. Lindeman, supra. From an examination of the record we find that two of the dogs of the litter from which Mrs. Lincecum's puppy came were sold for the sum of $200.00, although this particular puppy was a gift. Plaintiffs argue that this was intended to be a show dog and worth much more than the others which were sold for pets. However, the evidence is to the effect that this dog had very poor vision and was blind to a large extent in both eyes. Elicited testimony shows that a blind, sick dog is not allowed to be shown under the American Kennel Club rules. We conclude that this puppy was not a healthy one, and certainly not of show quality, and consequently was of a much lesser value than the other offsprings which were sold.
The burden was on defendants to show facts authorizing a reduction or mitigation of the damages claimed. See 89 C.J. S., Trover and Conversion § 121 (1955). Here defendants have produced sufficient evidence to merit a reduction. Under the circumstances we feel that the puppy involved in this conversion had a value of $50.00.
In regard to the other damages claimed we agree that when it is found that a taking is "wrongful and without the consent of the plaintiff, some humiliation, embarrassment and inconvenience follows." Steadman v. Action Finance Corp., 197 So.2d 424 (La.App. 2nd Cir. 1967). Our examination of the circumstances surrounding this conversion indicates that the award of $100.00 for mental anguish and humiliation would be adequate and proper.
It was conceded by counsel for the plaintiffs, at oral argument, that the husband of Attie Lincecum, Max Lincecum, has no claim in this suit because of a prior judicial separation, and that any judgment awarded is to be in favor of Mrs. Lincecum only.
For the above and foregoing reasons, the judgment appealed is reversed, and there will now be judgment in favor of plaintiff Attie Lincecum and against the defendant Darrell Smith in the sum of $150.00 with legal interest from date of judicial demand. Costs, both at trial and on appeal are assessed against Darrell Smith.
Reversed and rendered.
NOTES
[1] Editor's Note: Justice BARHAM, of the Supreme Court, concurs in the refusal of the writ, with the following comment: "Trover and conversion are common law remedies. The civil law of Louisiana does not follow the common law and especially does not follow these common law concepts. Recovery is had for all damage caused by the fault of another under Civil Code Article 2315."