425 So.2d 366 (1982)
Clarence GUIDRY and Maudrey L. Guidry, Plaintiffs-Appellees,
v.
Edwin D. RUBIN, Joshua J. Pitre and Patricia Dartez Guidry, Defendants-Appellants.
No. 82-406.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1982.
*368 Marion Overton White, Opelousas, and Walter E. Keller, Jr., Lafayette, for defendants-appellants.
Charles M. Thompson, Jr., of Thompson, Sellers & Bundick, Paul G. Moresi, Jr., Abbeville, for plaintiffs-appellees.
Before: GUIDRY, CUTRER and STOKER, JJ.
STOKER, Judge.
This suit is one for wrongful conversion of funds by the defendants. The defendants are two attorneys and their client. The attorneys are Edwin D. Rubin and Joshua J. Pitre, and their client is Patricia Dartez Guidry. The trial court granted judgment for the plaintiffs, Mr. and Mrs. Clarence Guidry, and awarded damages to them. The trial court held as follows: (1) the defendants failed to prove that the plaintiffs hired the defendant attorneys to represent them in a suit for the wrongful death of the plaintiffs' son, (2) the appointment of Patricia Dartez Guidry as "personal representative" pursuant to the provisions of 46 U.S.C. § 761 et seq., Death on the High Seas Act, did not automatically cause her contract for her own representation by the defendant attorneys to become a contract binding on the plaintiffs who are also beneficiaries under the statute, and (3) the issue of quantum meruit, not having been raised either by the pleadings or by the admission without objection of evidence tending to prove quantum meruit, was not properly before the court.
The defendants appeal. We conclude that the trial court was correct in its findings of fact and application of law. We affirm.

FACTS
On May 24, 1978, defendant Patricia Dartez Guidry, (Patricia), entered into a written contract with defendant attorney Edward D. Rubin, in which Mr. Rubin agreed to represent her in her claim for the wrongful death of her husband, Rudy James Guidry, who was the plaintiffs' son. Patricia was also represented by Joshua J. Pitre, the other defendant attorney.
Rudy's death being the result of an offshore accident, Mr. Rubin caused Patricia to be appointed as "personal representative" under the provisions of the Death on the High Seas Act (DOHSA). Under the provisions of DOHSA other petitioners were required to join in the suit of Patricia as the personal representative, and she had the duty to "maintain" the federal court suit for the benefit of all members of the class of persons named in the statute.
On or about May 22, 1978, the plaintiffs, Clarence and Maudrey L. Guidry, hired Paul G. Moresi, Jr., to represent them in connection with their claim for the death of their son. After writing two letters to Mr. Rubin, dated April 20, 1979, and August 23, 1979, demanding that Mr. Rubin institute legal proceedings on behalf of his clients, Mr. Moresi received a reply on November 30, 1979. In the reply letter Mr. Rubin informed Mr. Moresi that the petition in Patricia's suit had been amended to include the plaintiffs. After a pre-trial conference on March 3, 1980, at which all parties and their counsel, including the plaintiffs and Mr. Moresi, were present, the claims were settled. The settlement agreement provided that plaintiffs were to receive $16,708.35 for the loss of their son.
The settlement funds were paid to Patricia as personal representative and were deposited in a bank account in Lafayette. When the funds consisting of the plaintiffs' portion of the settlement were disbursed on August 19, 1980, Mr. Rubin informed Mr. Moresi that he was deducting $5,569.45 for his expenses and his attorney's fees. The *369 balance of the settlement amount, $8,866.81, was forwarded to the plaintiffs. Upon formal demand and refusal to pay the deducted amount, the plaintiffs filed this suit. At the time of the trial the funds in dispute were still on deposit in the Lafayette bank.

ISSUES
The issues raised by the defendants-appellants are:
1. Did the trial court err in finding the attorney-client contract between Mr. Rubin and Patricia was not binding on Clarence and Maudrey Guidry?
2. Did the trial court err in ruling that the issue of quantum meruit was not properly before the court?
3. If the defendants had no right of ownership in the disputed funds, did their retention of the money in a Lafayette Bank account constitute wrongful conversion?
4. If the defendants wrongfully converted the money, was there sufficient evidence of plaintiffs' damages to allow the trial court to award damages?
Another issue raised by the defendantsappellants we will not consider. That issue is whether or not Mr. Moresi represented the plaintiffs in the federal suit by Patricia Dartez Guidry. This suit by the plaintiffs focuses on the issue of whether defendants have a valid claim to the funds retained. Therefore, the extent of representation of the plaintiffs by Mr. Moresi is irrelevant to this suit.
We will discuss and dispose of the issues numbered above under the various subheadings listed below.
THE ATTORNEY-CLIENT CONTRACT BETWEEN PATRICIA AND MR. RUBIN WAS NOT BINDING ON THE PLAINTIFFS
The defendant attorneys contend that the plaintiffs were parties to the agreement in at least one of two ways: first, that the plaintiffs consciously availed themselves of, concurred in, acquiesced in, and took part in a contract that was intended to include them; and second, that Patricia intended, and had the right, under federal and state law, or both, to make the plaintiffs part of the contract, regardless of their consent or lack of consent. We reject these contentions.
The trial court correctly found that plaintiffs did not acquiesce in the contract as a matter of fact. There is no objective evidence of any intent by plaintiffs to take part in the contract or become parties to it. Their names do not appear in the contract and they did not sign the contract.
There is no proof that the contract was ever even intended to include the plaintiffs. Mr. Rubin testified that the plaintiffs were not present at the time the contract was confected, that they did not talk to the plaintiffs about the contract, and that he did not show the contract to them or to Mr. Moresi, their attorney. Mr. Rubin did not obtain plaintiffs' approval of the contract or their consent to it. There was no agreement for Mr. Rubin to act as plaintiffs' lawyer.
Alternatively, defendants urge that Patricia's contract under state or federal law bound the plaintiffs regardless of their lack of intent to be bound by it. We find no merit in this contention.
Section 761 of Title 46 of the United States Code reads as follows:
"§ 761. Right of action; where and by whom brought
Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued."
Mar. 30, 1920, c. 111, § 1, 41 Stat. 537.
*370 Defendants cite no federal jurisprudence for the proposition that the duty of the personal representative to "maintain" the suit grants her the right to hire counsel to exclusively represent those for whom the federal cause of action was created. The statute itself does not clearly speak to the issue. The word "maintain" does not mean to us the same thing as "represent" and does not indicate a statutorily created general agency relationship.
Having found that the determination of the extent of the attorney-representative relationship is not governed by federal law, we turn to state law.
The defendants contend that the case of Southern Shipbuilding Corp. v. Richardson, 363 So.2d 1329 (La.App. 4th Cir.1978), affirmed 372 So.2d 1188 (La.1979), requires that we reverse the trial court and dismiss plaintiffs' action against them. This case held that a mother need not qualify as tutrix of her minor children in order to bind them to a reasonable contingency fee contract with an attorney. The rationale of the case was that a mother, the natural tutrix, can perform valid acts for her minors who are without capacity to act for themselves without qualifying as tutrix. The codal articles requiring the tutrix to qualify before acting on behalf of her children is for their protection, and could not be relied upon by the mother to defeat the attorneys' claim for their contingency fee. The Supreme Court held that the only impediment to the binding nature a contract entered into before qualification as tutrix and obtaining court authorization "would be in the event the contract were to be unreasonable."
In summary, the mother in Southern Shipbuilding Corporation v. Richardson, supra, was simply performing a legal duty owed by her to her minor children, who lacked capacity to act for themselves, arising from the nature of the parent-child relationship. This duty exists even when procedural requirements of tutorship have not been complied with.
The instant situation is not analogous. Unlike minors and others lacking legal capacity to act, the plaintiffs have the capacity to contract. Therefore, Patricia had no duty or right to act on their behalf under Louisiana Civil law.

ISSUE OF QUANTUM MERUIT IS NOT PROPERLY BEFORE THE COURT
In his written reasons, the trial judge stated that the issue of quantum meruit was not properly before the court. An examination of the pleadings reveals that prior to trial there was no reference, even remotely, to the amount and time defendants devoted to the plaintiffs' portion of the settlement. Rather, the pleadings are strictly confined to the question of whether defendants had a contract with the plaintiffs. Code of Civil Procedure Article 1154 provides as follows:
"Art. 1154. Amendment to conform to evidence
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
The third sentence of the article provides for allowance of an amendment of the pleadings under certain circumstances. A party who wishes to introduce evidence not within the issues made by the pleadings must move that the pleadings be amended *371 before the issue-raising evidence can be admitted over objection. Marceaux v. Reese, 365 So.2d 504 (La.App. 3d Cir.1978); Wanda Petroleum Company v. Mac Drilling, Inc., 353 So.2d 474 (La.App. 3d Cir.1977); Bosworth v. New Orleans Federal Savings & Loan Association, 258 So.2d 191 (La.App. 4th Cir.1972); Webster v. Rushing, 316 So.2d 111 (La.1975) and Gar Real Estate & Insurance Agency v. Mitchell, 380 So.2d 108 (La.App. 1st Cir.1979).

DEFENDANTS' ACTION WAS CONVERSION
Because the defendants had no right to the funds which they kept, their retention constituted a wrongful conversion. Conversion is defined as a distinct act of dominion wrongfully exerted over another's property in denial of or inconsistent with the owner's rights therein. Haymon v. Holliday, 405 So.2d 1304 (La.App. 3d Cir. 1981), citing Lincecum v. Smith, 287 So.2d 625 (La.App. 3d Cir.1973), writ refused, 290 So.2d 904 (La.1974); LSA-C.C. art. 2315; Hamilton v. Travelers Indemnity Company, 248 So.2d 617 (La.App. 3d Cir.1971); Importsales, Inc. v. Lindeman, 231 La. 663, 92 So.2d 574 (1957).
Assuming that an attorney might properly deduct his fee from funds due a client with whom he has contracted which are derived from proceeds of a settlement or payment of a judgment, there was no such contractual authority with respect to the plaintiffs in this case. Plaintiffs' settlement funds were paid to the personal representative, but there was no agreement that the plaintiffs should receive other than the full amount. After formal demand had been made on the defendants and they had refused to complete the payment, it was clear that the defendants did not intend to disburse the full amount of the funds due plaintiffs.
Although the funds were preserved in a bank account, the plaintiffs were nonetheless denied their ownership rights to the funds. The defendants might have disbursed the plaintiffs' funds to them and sued for compensation for services rendered on the basis of either contract or quantum meruit. The claim in quantum meruit might have been asserted as an alternative claim. However, the question of quantum meruit is not before this court. Moreover, even if the defendant attorneys were to successfully establish a claim against the plaintiffs on the basis of quantum meruit in another proceeding, such would not establish a right to the particular funds now in dispute or to an amount other than a sum fixed through the exercise of discretion by a court.
Quantum meruit is a claim based on the value of services rendered and is properly determined by a tribunal. Self-help is generally frowned upon by our courts and is inimical to public order. Thus, the defendants cannot use the unadjudicated and unanticipated assertion of a quantum meruit theory of recovery as a pretext for exercising control over funds they did not own.

DAMAGES WERE SUFFICIENTLY PROVEN
In addition to the return of the value of the thing converted, damages are recoverable in this type of case for inconvenience, aggravation, distress, mental shock, anguish, and humiliation. Banner Chevrolet, Inc. v. Kelt, 402 So.2d 747 (La. App. 4th Cir.1981); Deshotels v. Statewide Trailer Sales, 333 So.2d 259 (La.App. 1st Cir.1976); Hamilton v. Travelers Indemnity Co., 248 So.2d 617 (La.App. 3d Cir.1971); Bostwick v. Avis Rent-A-Car, 215 So.2d 854 (La.App. 1st Cir.1968); and Marcel v. Denton, 195 So.2d 163 (La.App. 1st Cir.1967).
The plaintiffs allege in their petition that they have suffered from embarrassment, humiliation, shock and mental anguish. Maudrey L. Guidry stated that she was shocked and angry when she learned that she and her husband did not receive the full amount of their recovery. Clarence stated that he "had a bad feeling". Although the testimony of plaintiffs was not as articulate as might be desired, we believe that the trial court's award of $500 each to Clarence and Maudrey L. Guidry as damages was within the trial court's discretion.
*372 The plaintiffs were deprived of the use and enjoyment of their settlement recovery for over two years. On March 3, 1980, the claim in the Patricia Dartez Guidry suit were settled. On August 19, 1980, after Mr. Moresi had demanded payment from the defendants, the settlement to the plaintiffs minus the disputed amount was disbursed to the plaintiffs. The trial of the case was January 9, 1982, and the judgment for the plaintiffs was signed on April 1, 1982. We believe the award for damages over and above the amount of the funds withheld was clearly justified by the facts.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. The defendants are cast for the costs of this appeal.
AFFIRMED.