125 So.2d 181 (1960)
Michael PISCIOTTA
v.
Vernon DU SAULES and Mary Marcet, d/b/a Victor's Cafe and Victor Saladino.
No. 21567.
Court of Appeal of Louisiana, Fourth Circuit.
December 5, 1960.
Rehearing Denied January 3, 1961.
*182 M. C. Scharff, New Orleans, for defendants and appellants.
Reed, Reed, Reed & Garvey, John A. Salvaggio, New Orleans, for plaintiff and appellee.
Before JANVIER, REGAN and SAMUEL, JJ.
REGAN, Judge.
Plaintiff, Michael Pisciotta, instituted this suit against the defendants, Vernon DuSaules and Mary Marcet, conducting their business under the trade name of Victor's Cafe, and Victor Saladino, to compel them to relinquish possession of an antique grandfather's clock, which is now in the premises owned by Saladino and leased by him to DuSaules and Mary Marcet. *183 Plaintiff further prayed for $850 which he insists represented the amount of damages he incurred by virtue of defendants' refusal to deliver the clock plaintiff had acquired by purchase from Victor Valentinien, Saladino's vendor of the property in which Victor's Cafe is located.
Defendants pleaded various exceptions, which were overruled, and then answered asserting as a defense that they were legally justified in retaining possession of the clock because Valentinien had agreed with Saladino that the clock was to remain in Victor's Cafe until his death in consideration of Saladino's forfeiting an option to purchase the clock from Valentinien for $1,000.
From a judgment ordering the defendants to release the grandfather's clock to plaintiff, but rejecting plaintiff's prayer for damages, the defendants have appealed. Plaintiff has answered the appeal and reurged his claim for monetary damages.
In 1954 Victor Valentinien leased the premises and business thereon, which was known as Victor's Cafe, to Victor Saladino. Included in this lease was an option granted by the owner to the lessee to purchase the business and the realty. A year later, Saladino notified his lessor that he wished to exercise the option, then Valentinien instructed his attorney to prepare the necessary documents, one of which was an agreement to purchase the business, wherein the furniture, fixtures and stock to be conveyed were itemized. The parties thereafter realized that no provision had been made for transferring an antique grandfather's clock located in Victor's bar and therefore an option was appended to the agreement to purchase the business, which reads:
"The Grandfather Clock in the Bar is not included in this sale. Vendee has the option to purchase the said clock within one year from acceptance of this offer for the price of $1,000."
The record reveals that this option was granted in May 1955, and the sale of the property and business was passed on July 11, 1955; up to this point the litigants are in accord relative to the facts.
Victor Saladino testified that one day before the option to purchase the clock was to expire, he tendered payment of $1,000 to Valentinien, advising him that he elected to exercise the option to buy the clock. Valentinien urged Saladino to waive his right to purchase the clock, explaining that he had promised many patrons of Victor's that the clock would remain in the bar until his death, and at that time it was to be donated to Mercy Hospital.
In consideration of foregoing his right to purchase under the option, Saladino related, Valentinien promised to leave the clock in the bar until his death. Saladino stated this oral agreement was witnessed by one Dave Hennessey, who unfortunately died prior to the trial hereof.
Saladino, in explaining the chain of management of the business from that time until the present, related that after operating the restaurant and bar for two years, he sold that business to plaintiff herein and leased the premises to him. Plaintiff was the proprietor until January 1, 1958, at which time he sold the business to defendants, Vernon DuSaules and Mary Marcet, who subleased the property from plaintiff Pisciotta.
In order to rebut Saladino's testimony relative to the oral agreement, plaintiff called Valentinien's attorney, who related his client contacted him after the option to purchase the clock had expired and inquired if he might sell it to someone else. The attorney told Valentinien he could sell the clock to anyone; however, as a courtesy to Saladino, it was again offered to him but he declined the opportunity to purchase. Thereafter, in conformity with the instructions of his client, the attorney prepared a sale and chattel mortgage contract to transfer the clock from Valentinien to the plaintiff. The sale price was $1,000, $100 of which was to be paid in cash and the balance to be represented by a $900 *184 promissory note, secured by a chattel mortgage. This sale, set for June 28, 1956, was never completed because plaintiff did not wish to have a chattel mortgage recorded against him and he did not have sufficient cash to pay in full for the clock.
Finally, on January 2, 1958, Valentinien sold the clock to plaintiff for $200. The transfer is evidenced by a contract of sale signed by both parties and two witnesses.
At this point it might be well to state that the one witness who may have resolved the conflicting testimony beyond all doubt, namely Victor Valentinien, was called to testify and after a short interrogation, the court properly declared Valentinien to be an incompetent witness. His physical and mental health had been impaired as a result of illness.
In any event, on several occasions plaintiff's wife told DuSaules that her husband had purchased the clock from Valentinien and she informed him she would permit the clock to remain in Victor's until the redecoration of her home was completed. Sometime later, or about June of 1958, Mrs. Pisciotta sent a drayman to pick up the clock; however, DuSaules refused to release it, hence, this suit for possession of the clock.
Plaintiff contends that the judgment of the trial court was correct in recognizing plaintiff as the owner of the clock and in concluding that the defendants had failed to prove the existence of an agreement between Valentinien and Saladino to the effect that the clock was to remain in Victor's bar until Valentinien's death and his right to sell the clock to the plaintiff was subject to this condition.
Defendants conversely argue that the 1955 agreement between Saladino and Valentinien was proved by the testimony of Saladino and "corroborating circumstances", namely, the failure of Valentinien to remove the clock from the bar for a period of three years prior to the purported sale to plaintiff.
In view of what we have related hereinabove, it appears that defendants' right to retain possession of the clock turns on whether they have produced sufficient evidence to establish the agreement between Valentinien and Saladino. The method of establishing the existence of a contract, involving a sum greater than $500 is prescribed by LSA-Civil Code, Article 2277, which reads:
"All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances."
The trial judge obviously concluded that the defendants had failed to produce sufficient evidence to establish the oral contract whereby Valentinien could only sell the clock subject to the agreement that it remain in Victor's until he died. We find no error in this conclusion.
While the testimony of Saladino was introduced to establish the existence of such a contract, it was refuted to a great extent by that of Valentinien's attorney who testified that Saladino was again afforded an opportunity to purchase the clock after the confection of the alleged agreement between Valentinien and Saladino, and at that time he declined. Even if the record did not reflect discrepancies and conflicts between the testimony of Saladino and other witnesses, Saladino's testimony alone would not be sufficient to establish the contract which defendants insist exists because the "corroborating circumstances" required by Article 2277 have not been *185 established by the testimony inscribed in the record.
Therefore, we are of the opinion that the plaintiff has proven his ownership by a written contract of sale and defendants have failed to legally justify their retention of the clock, and the judgment of the trial court ordering the defendants to relinquish possession thereof is correct.
Turning our attention to plaintiff's request for $850 damages, we notice that this amount includes $500 for embarrassment, $200 for willful conversion and $150 for attorney's fees.
Relative to the first item, the only evidence adduced to prove embarrassment to the plaintiff, caused by the defendants' refusal to release the clock, was a statement by his wife to the effect that she had informed her friends about the acquisition of the clock and when they came to see it, she was humiliated because it was not in her home. The whole tenor of the record utterly fails to establish that plaintiff was in fact humiliated and is entitled to damages as a result thereof.
Plaintiff's prayer for $200 damages for defendants' willful conversion of his property is likewise without merit. The general rule prescribing the measure of damages for tortious conversion is the value of the property converted plus interest, if the property has been sold to a third person, and if not, the plaintiff is entitled to recover the property itself.[1] Since plaintiff has been awarded possession of the clock, he has no further recourse against the defendants.
Plaintiff also seeks to recover $150 attorney's fees expended by him to recover his property. It is a well-settled principle of law that a litigant may recover attorney's fees only in instances where the parties to the litigation have previously contracted therefor or where such fees are prescribed by statute.[2]
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] Importsales, Inc. v. Lindeman, 1957, 231 La. 663, 92 So.2d 574.
[2] See Hernandez v. Harson, 1958, 237 La. 389, 111 So.2d 320; Chauvin v. La Hitte, 1956, 229 La. 94, 85 So.2d 43; Miller v. Welsh, La.App.1953, 66 So.2d 25, and Rhodes v. Collier, 1949, 215 La. 754, 41 So.2d 669.