LANDRY, Judge.
Plaintiff, Ivy J. Marcel (appellee), instituted this action seeking judgment against defendant, William S. Denton (appellant), for rent allegedly due pursuant to the verbal lease of a warehouse owned by plaintiff and situated in the City of Houma, Louisiana. Defendant reconvened for damages contending plaintiff converted certain movable property belonging to appellant and situated in the aforesaid warehouse, by padlocking the premises, denying appellant access thereto and preventing appellant from removing his possessions therefrom. The trial court found that a verbal lease was confected between the parties pursuant to which defendant agreed to rent the warehouse for the sum of $125.00 monthly and held defendant responsible for rent in that sum from November 23, 1964, to June 30, 1965. On this premise the trial court rendered judgment in plaintiff’s favor for the sum of $908.33 and rejected defendant’s re-conventional demand. From said adverse determination, defendant has appealed contending the trial court erred in (1) finding that the parties agreed to a verbal lease of the premises; (2) concluding that ap-pellee was not guilty of converting appellant’s property, (3) alternatively, allowing plaintiff rent at a disproportionate rate and for an excessive period of time. We find appellant’s position well taken and hold that the demands of both litigants must be dismissed.
In October, 1964, plaintiff advertised subject property for sale. On an undisclosed date (presumably in November, 1964), defendant approached plaintiff offering to lease the premises but plaintiff declined and advised defendant the property was for sale only. Defendant expressed a desire to purchase provided he was afforded immediate use of the premises for storage and granted time to make financial arrangements to purchase. Beyond these stated circumstances on which the parties concur, there is virtually total disagreement as to the events surrounding the alleged lease. We believe, however, both parties are in absolute good faith but that through mutual misunderstanding there was never a meeting of the minds regarding a lease of the premises in question.
In essence plaintiff testified he agreed to sell the property to defendant with the understanding defendant would rent at the price of $125.00 until financial arrangements could be made to purchase. He further contends it was agreed defendant would be given credit for three months rent against the sale price. Conversely, appellant maintains there was never an agreement to lease but solely a contract to purchase subject to certain conditions which appellant could not meet. In addition, defendant argues plaintiff accorded him the right to use the property, with no agreement or understandinng as regards rent, until the purchase was consummated.
On November 23, 1964, plaintiff executed a written “agreement to purchase and sale” wherein he consented to sell defendant the property for the sum of $15,000.00, cash, within 30 days of November 30, 1964, pro *165 vided defendant could secure a loan of the stated purchase price at not more than 6% interest. The agreement, which appears in the record, was never signed by defendant. Nevertheless, defendant immediately stored on the premises several hundred sheets of paneling measuring four feet in width by eight feet in length, each being one-quarter inch thick. Defendant also made bona fide attempts to secure the necessary finances to complete the sale. Upon expiration of the delay stipulated in the agreement to sell, the time stated in the agreement was verbally extended indefinitely. Meanwhile, however, defendant, with plaintiff’s full knowledge and consent, moved onto the premises certain restaurant equipment, lumber and other articles belonging to defendant together with a lathe owned by a third party and stored these items alongside chattels belonging to plaintiff and also stored in the warehouse. It further appears defendant attempted to sublease the premises as a wood-working shop and made bona fide efforts to obtain a loan to complete the purchase. From the inception defendant was given a set of keys to a side door and was free to utilize the property as suited his purposes.
For several months defendant pursued his efforts to borrow the purchase price without success and eventually attempted to remove his possessions from the warehouse. He was prevented from doing so by plaintiff as will hereinafter appear. Plaintiff then instituted this action for rent and obtained a writ of sequestration seizing defendant’s belongings. The seizure was bonded by defendant who then removed his possessions.
We believe plaintiff’s testimony may be fairly summarized by stating there was no initial agreement of lease as plaintiff contends but rather the parties originally contemplated a sale of the premises with the prospective purchaser being accorded free use of the property as an added inducement to buy. Subsequently, when it became apparent to plaintiff that defendant could not make financial arrangements within the period initially agreed, plaintiff considered the advisability of arranging a temporary lease until the sale was confected.
It is elementary law that a contract of lease is dependent upon three indispensable factors, namely, the thing, the price and consent of the parties. Absent either factor, there can be no valid lease. LSA-C.C. Article 2670; McCain v. McCain Bros., 165 La. 884, 116 So. 221; Faroldi v. Nungesser, La.App., 144 So.2d 568.
Our review of the record fails to disclose any agreement whatsoever between the parties regarding a mutual understanding with respect to a lease of the premises. That no specific monthly rental was ever agreed upon is virtually conceded by plaintiff. Defendant denies that any rental figure was ever mentioned and that plaintiff steadfastly refused to consider a lease. On page 68 of the record we note the following testimony given by defendant:
"Q Did you agree to rent the premises from Mr. Marcel?
A No, sir.
Q Did you request that he rent the property to you?
A That’s correct. We discussed it and he declined to make any commitment about renting only that he wanted to sell it, it wasn’t for rent.”
Again at page 97 of the record we observe defendant’s testimony as follows:
"Q Did you ever agree to pay Mr. Marcel any money?
A No, sir.
Q Did you ever agree to rent the property?
A No, sir. Rent was discussed at the beginning. He said he wasn’t interested in renting under no circumstances, because, because if he’d have rented it and we could have got possession of it we would have got right on operating that woodwork *166 ing shop. That’s what held up the deal with Wright to open up the woodworking shop. We never could get possession of the building.”
Plaintiff’s own testimony shows that none of the three essentials were agreed upon between the parties although plaintiff considered the rent should have begun when defendant received a set of keys to the building. With respect to the date of commencement of the lease plaintiff was most vague and uncertain as evidenced by the following testimony appearing at pages 107-108 of the record:
“Q You alleged that the lease began on or about the 7th day of November, 1964. How did you arrive at this date?
A What date was that thing drawn?
Q I have no idea, sir.
A I don’t either. The time he got the keys the rent should have started then.
Q But you allege a specific date in the petition.
A That the rent would start?
Q Yes, sir. How did you arrive at this date ?
A I don’t know. Maybe I’m due more rent than I thought. Maybe I started too late.
Q I assume, sir, that you do not know the exact date when you allege the lease began.
A I don’t, but it’s in October I imagine.”
Also at page 53 of the record we find the following enlightening testimony of plaintiff:
“Q Did Mr. Denton shortly after you ordered him to leave the premises attempt to do so ?
A Right, but he didn’t want to pay me. He said he didn't owe me anything.
Q Did you demand any particular sum of rent at that time?
A No. I hadn’t figured it out. I thought we’d get together and figure what he owed me.
Q Did Mr. Denton task (sic) you how much he owed you or how much you felt like he owed you?
A He knew what he owed me. Let’s put it that way. He knew it was 125 a month. I came to Bobby and I offered Mr. Denton to go ahead and settle for $400.00 to get his stuff out of there and he said I wouldn’t get anything.
Q Did Mr. Denton ask you how much he owed you or how much you felt like he owed you? Would you answer that question?
A No.”
While the agreement to purchase is not binding upon the parties because it was never signed by defendant, nevertheless we think its content sheds some light upon this matter. It is of significance, we think, that the agreement failed to mention either a lease or that defendant would receive credit on the purchase price for any rent paid. Since defendant drew the agreement it appears most unlikely he would exclude therefrom mention of rent credit to be applied against the purchase price if such had been the agreement of the parties as contended by plaintiff. In addition, no consideration was to be paid by defendant for the privileges granted in the agreement.
These circumstances, we think, can only mean the parties anticipated a sale would ensue within a short period as evidenced by the purchase agreement. We find further that as time elapsed conversations between the parties indicated a vague agreement or understanding that plaintiff should receive some compensation for defendant’s use of the premises. Beyond the agreement that something should be done in this regard, there is no evidence of record indicating a *167 mutual understanding to lease for a specific price. Moreover, during the entire time involved, plaintiff continued to use a portion of the warehouse for his own purposes.
Although at times plaintiff testified positively the sum of $125.00 monthly was agreed upon, we find that in essence his testimony reveals a lack of agreement as to any specific price and that the figure of $125.00 per month is plaintiff’s estimation of the worth of the property to defendant. Appellant, on the other hand, denies any monthly rental agreement was reached and we find the evidence preponderates in favor of this conclusion. There being no agreement as to price, there was no contract of lease between the parties. Jones v. Janes, 156 La. 715, 101 So. 116; McCain v. McCain Bros., supra.
Nevertheless, it appears that certain conversations between the parties support the conclusion that appellant led appellee to believe appellee should receive some remuneration for appellant’s protracted use of the premises. However, it also appears no exact sum was ever mentioned or agreed upon.
Regarding appellant’s reconven-tional demand for the alleged conversion of his goods, the record discloses that when plaintiff realized the sale would not be consummated after three or four months negotiations, plaintiff padlocked the front door of the establishment and forbad appellant to remove anything from the warehouse. It is conceded that on one occasion when plaintiff was out of town, plaintiff’s wife, with plaintiff’s authorization, physically barred the door by blocking it with an automobile and thus prevented defendant from moving therefrom certain articles which he intended to sell. Granting that appellant possessed a key to a side door as plaintiff contends, it nevertheless appears that from the moment defendant padlocked the front door he made it clear he would prosecute appellant if appellant made any attempt to enter the premises or remove anything therefrom without appellee’s permission and consent. Conversion is any act of dominion wrongfully asserted over another’s personal property in denial of, or inconsistent with the owner’s rights therein, such as the tortious taking of another’s chattels or any wrongful exercise or assumption of authority thereover which deprives the owner of possession either permanently or for an indefinite time. Edwards v. Max Thieme Chevrolet Co., La.App., 191 So. 569.
In view of the circumstances shown we have no difficulty in concluding plaintiff wrongfully assumed dominion of appellant’s chattels stored in the warehouse in question.
 The measure of damages due for trover and conversion of another’s goods is the value of the goods at the time the wrong occurred, if the property has been sold to third persons. Pisciotta v. DuSaules, et al., 125 So.2d 181. If not sold to third persons, the owner is entitled to the return of the property together with such damages as he may have sustained and can establish with that certainty required by law. Hernandez v. Harson, 237 La. 389, 111 So.2d 320.
Our review of the record discloses no evidence upon which an award in damages could be made to appellant. While it is true appellant testified he was humiliated in the presence of a prospective buyer of some of the goods by the action of plaintiff’s wife in barring the door to the warehouse, any damages due appellant as a result thereof must be offset by the value of the use of the premises which appellant enjoyed without remuneration to appellee. Appellant also testified he was denied opportunity to sell some of the restaurant equipment by plaintiff’s refusal to permit removal thereof from the premises. It does not appear what disposition of these goods were made subsequent to appellant’s bonding the seizure and obtaining possession of his said chattels. Consequently, the loss to appellant, if any, resultant therefrom *168 is not shown with that degree of certainty required by law.
Accordingly, the judgment of the trial court in favor of plaintiff is hereby annulled, reversed and set aside and judgment rendered herein rejecting and dismissing the main demand of plaintiff, Ivy J. Marcel, and the reconventional demand of defendant, William S. Denton, with prejudice. All costs of these proceedings, including those of appeal, to be paid equally by plaintiff and defendant.
Reversed and rendered.