MORIAL, Judge.
This is an appeal from a judgment of the district court dismissing defendant’s suit for an injunction to arrest seizure and sale under executory process.
On July 30, 1974 defendant, Campo Realty Company, Inc. received $4,100,000 from plaintiff, the Louisiana State Employees Retirement System, pursuant to a first mortgage secured by the property known as the International American Motor Inn. When the first monthly payment *473 of $35,225.84 became due on September 1, 1974, defendant remitted its check which was returned because of insufficient funds. This check was not made good and defendant also failed to make the payment which became due on October 1, 1974.
At a meeting of the parties on October 8, 1974, it was revealed that defendant was unable to presently meet its monthly mortgage payments. Counsel for plaintiff suggested that if defendant could pay $5,000 per week on its obligation to be credited against interest, the balance of interest and principal could be postponed for six months. Defendant stated it could not produce this much cash weekly but it was expecting an Internal Revenue Service tax refund of approximately $33,000 which it would assign to plaintiff. No decision was made at this meeting.
On October 30, 1974 defendant assigned its “expected” tax refund to plaintiff. Soon after, representatives of defendant met with plaintiff’s investment committee. Defendant therein presented a proposal for a six month moratorium which it alleges had provisions for weekly payments of $2,000 plus the previously assigned tax refund. Witnesses for plaintiff though testified that in addition to the tax refund and the weekly payments, defendant was also to make good the NSF check. It is agreed by all parties that the proposal was taken under advisement and was neither accepted nor rejected at the conclusion of this meeting.
Nonetheless, on November 12, 1974 defendant began making $2,000 weekly payments, which continued until December 9, 1974. The tax rebate of $30,091.85 also was eventually received and all funds were placed in escrow. Defendant claims it terminated its weekly payments because it was advised by its counsel that plaintiff was no longer honoring the moratorium and intended to foreclose.
Plaintiff thereafter filed suit on December 26, 1974 seeking to foreclose via execu-tiva. On January 14, 1975 defendant filed a petition for injunction to arrest the seizure and sale under executory process, alleging the existence of a valid and binding moratorium agreement and a defect in the act of mortgage. The trial court refused to enjoin the sale. Defendant appeals from this judgment. We affirm.
Defendant contends the trial court erred in not holding that it had satisfied a moratorium agreement consisting of the assignment of the tax refund and weekly payments of $2,000. We do not agree.
Defendant bases its argument mainly upon plaintiff being estopped to deny the agreement because of its acceptance of five weekly payments and the assignment. We consider this to be of no moment in this particular factual framework. At the time of the investment committee meeting defendant had made no payments on the mortgage and was already $122,717.45 in arrears. As stated before, no moratorium agreement was finalized at this meeting. However, it was indicated that the assignment of the tax refund, ^ou-pled with $2,000 weekly payments and satisfaction of the NSF check, would lead to serious consideration of a moratorium. Soon after, John Campo, president of defendant corporation, assured representatives of plaintiff that the check would be made good and he was then told to begin the $2,000 payments as a gesture of good faith. When after several promises to deliver the check, payment still did not materialize, plaintiff then decided to end negotiations on a moratorium and foreclose.
After a full review of the record we must conclude that a moratorium agreement was never effectuated. Although numerous discussions and proposals on the subject took place, representatives of plaintiff never agreed to merely accept $2,000 per week and the tax assignment in consid *474 eration for a moratorium. The record preponderates in favor of the conclusion that before any agreement could have become effective defendant had to first satisfy the NSF check. Plaintiff cannot now be es-topped to deny an agreement which never existed.
In conjunction with its version of the moratorium agreement, defendant alleges the doctrine of anticipatory breach of contract as its reason for discontinuing the weekly payments after notice of the pending foreclosure. While we recognize the existence of that doctrine in this state, it is inapplicable in this instance because of our conclusion that a moratorium never came into effect.
Finally, defendant asserts the trial court should not have upheld the authenticity of the act of mortgage because in his deposition the closing notary could not identify one of the witnesses signatures. In its reasons for judgment, the court found that while the notary could not recognize the signature, his testimony sufficiently established that this person was present when the document was signed by the parties. An authentic act complete upon its face carries a presumption of validity LSA-R.C.C. Art. 2236; Eschete v. Kraemer, 129 So.2d 475 (La.App. 1 Cir. 1961). The trial judge apparently concluded that defendant had not overcome this presumption. We cannot say this conclusion is manifestly erroneous.
The judgment of the district court is affirmed.

Affirmed.