KLIEBERT, Judge.
Plaintiff, International American Company, Inc. (hereafter IACO) brought this suit against the Louisiana State Employees’ Retirement System (hereafter LASER) for the alleged wrongful seizure and/or conversion of its assets and the unlawful use of its trademark and trade name. The trial judge rendered judgment in favor of IACO and against LASER in the amount of $21,062.71 plus $7,500.00 in attorney fees and costs of $4,316.30. LASER appealed. IACO answered the appeal. We amend the judgment of the trial court and as amended affirm it.
Campo Realty, Inc. (hereafter Campo) borrowed funds from LASER and secured same with a real and chattel mortgage on property, buildings and chattels of a motor hotel located in Jefferson Parish. At the loan closing, in addition to a chattel and real estate mortgage, Campo executed in favor of LASER an assignment of leases and management. Also a letter agreement was executed by Red Carpet Inn, Inc. in favor of LASER. In the event of a foreclosure, LASER could exercise Campo’s rights under the franchise agreement with Red Carpet Inn, Inc. Prior to the execution of the loan documents, IACO had entered into an agreement with Campo to operate the hotel under a franchise agreement. The agreement between Campo and International American Motor Inn was not recorded in the Jefferson Parish mortgage or conveyance or other public records, nor did Campo inform LASER of its existence at the time of the loan closing. After the loan became delinquent and it was apparent foreclosure proceedings were imminent, IACO informed LASER of the agreement.
The mortgage instrument by Campo to LASER contained the following provision:
“Irrespective of whether Mortgagee accelerates the maturity of all indebtedness secured hereby, or institutes foreclosure proceedings, Mortgagee at its option may have a receiver appointed by the Court to take possession of the premises and to manage, operate and conserve the value thereof and collect the rents, issues and profits thereof. Such receiver may also take possession of, and for these purposes use, any and all personal property con *143 tained in the premises and used by Mortgagor in the rental or leasing thereof or any part thereof. The right to enter and take possession of the premises and use any personal property therein, to manage, operate and conserve the same, and to collect the rents, issues and profits thereof, shall be in addition to all other rights or remedies of Mortgagee hereunder or afforded by law, and may be exercised concurrently therewith or independently thereof. After paying costs of collection and any other expenses incurred the proceeds shall be applied to the payment of the indebtedness secured hereby in such order as Mortgagee shall elect, and Mortgagee shall not be liable to account to Mortgagor for any action taken pursuant hereto other than to account for any rents actually received by Mortgagee.”
Via executiva foreclosure proceedings were instituted on December 27, 1974. LASER, in accordance with the quoted provisions, suggested the name of a receiver and he was appointed by the court to operate the hotel. The “via executiva” foreclosure and the appointment of the receiver were promptly challenged. The trial judge upheld the foreclosure and LASER’S authority to have the receiver appointed, but in accordance with LASER’S request, changed the former receiver appointing a former employee of IACO to serve as receiver. In an appeal as to the validity of the foreclosure, this court affirmed its validity. See Louisiana State Employees’ Retirement System v. Campo Realty, Inc., 327 So.2d 472 (La.App., 4th Cir. 1976). The receiver managed the hotel under the name “American International Motor Inn” until it was sold to LASER at public auction on September 15, 1976. An accounting of the stewardship was filed in the trial record. LASER acquired the hotel and chattels at the foreclosure sale and continued to operate the hotel as the International American Motor Inn until August 29, 1978 when it sold the hotel. Shortly after the seizure, IACO brought this suit claiming LASER, through its representative, i.e.,’the receiver, took possession of all of the assets of IACO, with full knowledge the assets were in no way included under or encumbered by the mortgage foreclosed on. IACO itemized the damages it sustained as a result of the wrongful seizure as follows:
(a) Liquor inventory of petitioner located at the International American Motor Inn at the time of the seizure: $ 15,000.00
(b) Pood, condiments and kitchen expendibles located at the International American Motor Inn at the time of the seizure: 8,000.00
(c) General room expendibles including toilet tissue, soap, laundry supplies, chemical cleaners, etc., of petitioner located at the International American Motor Inn at the time of the seizure: 4,000.00
(d) Office supplies, including forms, reproduction paper, stationery, advertisement literature, stamps and general office supplies of petitioner located at the International American Motor Inn at the time of the seizure: 2,000.00
(e) Advance bookings for guest rooms, banquets, meetings and weddings, booked by International American Co., Inc., located at the International American Motor Inn on December 27,1974: 350,000.00
(f) Accounts receivable of petitioner located at the International American Motor Inn on December 27,1974, more fully described as follows:
1. American Express $ 8,950.00
2. Carte Blanche 1,700.00
3. Diner’s Club 520.00
4. TWA 16.00
5. Banquets 19,325.00
6. Direct Billings 9,550.00
7. Preferred Business Accounts 10,600.00
8. Accrued guest folios for accrued and unpaid room and other charges (food and beverage) at the time of seizure 3,000.00
$ 53,661.00
(g) Wrongful use of International American Motor Inn trademark and tradename: 50,000.00
(h) Wrongful seizure, use and appropriation of occupational and liquor licenses utilized by International American Co., Inc., in the operation of the International American Motor Inn: 1,500.00
(i) Loss of good will, loss of future profit and complete destruction of the International American Co., Inc. business: 250,000.00
In his reasons for judgment, the trial judge made the following findings of fact:
“The hotel was owned by Campo Realty, Inc. (hereinafter referred to as Campo) after its design and construction by plaintiff. After construction the operation and management were performed by plaintiff under its agreement with Cam-po. Plaintiff purchased all food, liquors, *144 and supplies. Campo owned all physical assets except for some office furniture owned by plaintiff. Plaintiff was to collect all revenues, pay all operating expenses, and keep three and one-half per cent of the gross as its fee.
Campo had mortgaged the hotel to defendant and fell into arrears which precipitated the foreclosure on December 27, 1974. The deputies assigned to inventory and seize the hotel included liquor, food and other supplies which actually belonged to plaintiff despite the fact that defendant knew that these items were the properties belonging to plaintiff (P-9) and despite plaintiff’s demands at the time of foreclosure.
Additionally, defendant invoked a receiver who ignored plaintiff’s protests and plaintiff was forced out of the operation. Although the original receiver was eventually removed by the court, a successor ran the hotel under the trademark registered to plaintiff, over plaintiff’s protests, until the hotel was sold to its present owner in August of 1978.”
Based on these findings, the trial judge awarded to IACO damages as follows:
Liquor Stock $ 4,455.68
Food Supplies 8,000.00
Room Expendables 382.00
Office Supplies 1,433.88
TOTAL $ 14,271.56
He refused to award the damages claimed by IACO for advance bookings and accounts receivable on the grounds IACO’s contract with Campo was not recorded, hence, the proprietary interest of IACO terminated when the foreclosure occurred.
Additionally, the trial judge found LASER had illegally used the trademark belonging to IACO for a period of fifty-six (56) months and accordingly awarded to IACO $500.00 per month or $28,000.00 for the trademark infringement. Also, the trial judge found that IACO was not entitled to collect the accounts receivable of $21,-062.71 belonging to Campo which it had collected and accordingly gave LASER a credit in this amount against the total damage award of $42,271.56 ($14,271.56 plus $28,000.00), leaving a balance due to IACO of $21,062.71. It also made an award of $7,500.00 in attorney fees.
In the answer to the appeal, IACO prays for an increase in the trial judge’s award to $335,211.00. In its brief, IACO contends IACO had expended efforts and funds for and therefore owned the advance bookings and the accounts receivable (actually credit card charges) for room rents and restaurant bills and should receive an award for these. He also argues that the trial judge erred in failing to award general damages.
On the appeal, LASER contends the public records doctrine is a complete bar to the plaintiff’s suit. Alternatively it contends IACO is estopped from claiming damages because of its failure to divulge the existence of the franchise agreement at the time the loan to Campo was closed, and the award of damages and attorney fees for the illegal use of the trade name and mark is contrary to 15 U.S.C. § 1117 (Part of the Lanham Act which is the federal trademark law).
Although the trial judge made an error in computing the time period (December 27, 1974 to August 21, 1978) during which the motel was operated under the name “International American Inn” as fifty-six months rather than forty-four months, after a careful review of the record we cannot conclude he committed manifest error in his findings of fact or abused his discretion in his award of damages.
As was observed by the trial judge on several occasions during the trial, the issue involved in this case is whether the State seized something it should not have seized when it took over the hotel and its operation. Since the agreement between IACO was not recorded in the public records of Jefferson Parish, the trial judge properly concluded all proprietary interest IACO had in the operation and management of the hotel terminated with the seizure. The Assignment of Leases and Management by Campo to LASER specifically provided:
*145 “THAT upon default under the terms of said note or mortgage or of this agreement, or at any time after such default, the Assignee, its successors or assigns, at its or their option and without further consent thereto by the Assignor or any subsequent owner of said premises, may enter in and upon said mortgaged premises and take possession thereof, and collect the rents and profits thereof, and do every act and thing that such Assignor or any subsequent owners of said premises might or could do;”
Although counsel for IACO now argues otherwise, during an argument in support of an objection he stated his client’s position as follows:
“... you see, we’re not contending that we had a right to keep our agreement in effect after the date of the seizure. We concede that the State should have had a right to terminate it... ”
Thus, the issue is, did the liquor, food, office supplies, general room expendibles, advance bookings and accounts receivable belong to Campo or to IACO at the time of the seizure. Also, although the State was authorized to take over the operation of the hotel, was it authorized to operate the hotel under the trade name “International American Motor Inn”?
Under the franchise operating agreement IACO purchased all of the food, liquor and supplies and was to collect all revenues, pay all operating expenses and keep three and one-half (3'/2%) per cent of gross receipts as its fee. LASER argues that since Campo furnished the “start-up funds” for the operations, the operating inventories were the property of Campo rather than IACO. Although there may be an accounting due between Campo and IACO for “start-up funds” and/or “for fees” due under the agreement, the accounting is of no moment here because our concern is with ownership of specific assets rather than an accounting between the parties to the agreement. Although not specifically stated by the trial judge, he apparently concluded as we do that since the operating inventories were purchased by IACO the portion which remained in inventory at the time of the seizure belonged to IACO. However, the gross revenues or receipts produced in the operation from the rents or the use or sale of the operating inventories belonged to Campo or his successor rather than to IACO. Therefore, since the operating inventories owned by IACO were actually seized and utilized by LASER in the operations conducted subsequent to the seizure, the trial judge properly awarded to IACO as a measure of damage for the wrongful seizure the value of the operating inventories at the time of the seizure, Marcel v. Denton, 195 So.2d 163 (La.App., 1st Cir. 1967). Additionally, since the advance bookings and accounts receivable represented sums due for restaurant charges, room rent and other hotel services and, hence, part of the gross income stream which belonged to Campo or his successor, rather than to IACO (albeit there may be an accounting due between Campo and IACO for fees earned in producing the gross income), the trial judge properly refused to consider the value of these or any fees which may be due to IACO by Campo in computing his damage award. Dalbey v. Continental Supply Co., 165 La. 636, 115 So. 807 (1928).
LASER was informed and knew prior to the seizure that the name “International American Motor Inn” was the property of IACO. Nevertheless, from December 27, 1974 to September 15, 1976, the receiver, appointed under the seizure, operated the hotel under IACO’s trade name. Further, after LASER acquired the hotel at the September 15, 1976 public sale, it continued to operate the hotel under the same name. IACO made no effort to enjoin the use of the name. The trial judge, without specifying whether this action was unlawful by virtue of the federal trademark law, i.e., the Lanham Act, 15 U.S.C. § 1051 et seq., or as a wrongful seizure or as a conversion, concluded its use by LASER was illegal and hence made a damage award for the illegal use of the IACO trade name. Further, it awarded, without stating the basis for same, attorney fees of $7,500.00 for handling all claims.
*146 In computing the general damage award the court considered $500.00 per month as a fair value for the use of the trade name and rejected IACO’s contention that it had been deprived of the right to open and operate a condominium type motel in Lafayette. Although it is true, as contended by IACO, that a party aggrieved by the wrongful seizure or conversion is entitled to recover general damages as well as special damages, he must nevertheless prove that he did sustain damages. Nassau Realty Co., Inc. v. Brown, 332 So.2d 206 (La.1976); Marcel v. Denton, 195 So.2d 163 (La.App., 1st Cir. 1967). Here the record fails to show the wrongful seizure or use of the trade name in any way hindered, interfered with or contributed to the failure of IACO’s Lafayette project. Rather, it showed the project failed on its own accord.
LASER contends that since the trademark was registered under the federal trademark law, damages can only be awarded pursuant to 15 U.S.C. § 1117. We do not agree. The court-appointed receiver claimed the right to and did in fact operate the hotel under the trade name by virtue of the seizure. Since Campo did not own the trade name, the seizure and use of the trade name was an illegal seizure and conversion. Further, since LASER continued to utilize the trade name after the seizure was terminated, IACO is entitled to claim damages for infringement under the provisions of 15 U.S.C. § 1117.
Despite appellate court decisions to the contrary; i.e., Pope v. Spiers, 347 So.2d 1191 (La.App., 1st Cir. 1977) and Escat v. National Bank of Commerce In New Orleans, 284 So.2d 832 (La.App., 4th Cir. 1973), Justice Marcus, as the organ of the Court in Nassau Realty Co., Inc. v. Brown, supra, at page 210 said:
“... The general rule in Louisiana is that attorney fees are not allowed except where authorized by statute or contract. Hernandez v. Harson, 237 La. 389, 111 So.2d 320 (1959); Moses v. American Security Bank of Ville Platte [222 So.2d 899, La.App.] supra; Morein v. G. J. Deville Lumber Co., Inc., 215 So.2d 208 (La. App.3d Cir. 1968). Although statutory provisions do permit the allowance of attorney fees for dissolution of improper seizures under writs of attachment, sequestrations or injunction (Louisiana Code of Civil Procedure, articles 3506, 3608), there are no provisions in law made for the recovery of attorney fees for damages for dissolution of a wrongful seizure of property under a writ of fieri facias. When such claim has been made, it has been rejected by the courts. Dubois v. Travelers Indemnity Company, 261 So.2d 94 (La.App.3d Cir. 1972); Moses v. American Security Bank of Ville Platte, supra. Thus the claim for attorney fees in the instant matter for wrongful seizure of the Brown property under the writ of fieri facias cannot be allowed.
Here, however, there is statutory authority for the award of attorney fees, namely, 15 U.S.C. § 1117, which provides in part as follows:
“. .., The Court, in exceptional cases may award reasonable attorney fees to the prevailing party ...”
Although LASER contends this is not an exceptional case, we consider it exceptional because LASER continued to use the trade name after the seizure was terminated and at times when IACO had repeatedly requested that it refrain from doing so and while IACO had a suit pending claiming damages for its illegal use.
Considering the fact the hotel involved here was the only one operated under the trade name, that it was never operated at a profit either by IACO, the receiver, or LASER, and the expert witness testimony of Mr. Lambert that in the absence of name recognition, the trade name does not have very much value, we cannot conclude the trial judge erred in awarding $500.00 per month as damages for the illegal use of the trade name. As a matter of fact, IACO could not have met its weekly operating payroll the week the seizure occurred. Additionally, although $7,500.00 may appear excessive as attorney fees for merely the Lanham Act portion of the claim, considering the fact this appeal was also involved *147 we will not disturb it. However, since the court erred by twelve months in computing the period of time the hotel was operated under the trade name by LASER we will reduce the award in favor of IACO by $6,000.00 ($500.00 X 12). Accordingly, that portion of the district court judgment awarding $21,062.71 in favor of International American Company, Inc. and against Louisiana State Employees’ Retirement System is amended to provide an award of $15,062.71 in lieu of $21,062.71 and as amended affirmed. All costs of appeal to be borne by the appellant.
AMENDED AND AFFIRMED.