402 So.2d 747 (1981)
BANNER CHEVROLET, INC.
v.
Harold G. KELT.
No. 11489.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1981.
Rehearing Denied September 17, 1981.
*748 Deutsch, Kerrigan & Stiles, Robert E. Kerrigan, Jr. and Ethel H. Cohen, New Orleans, for plaintiff, defendant in reconvention-appellant.
Evangeline M. Vavrick, New Orleans, for defendant, plaintiff in reconvention-appellee.
Before SAMUEL, REDMANN and BOUTALL, JJ.
SAMUEL, Judge.
Plaintiff filed this suit against Harold G. Kelt to recover $1,200, plus reasonable attorney's fees, for the difference between the value of a trade-in allowance made to defendant on the purchase of a new truck and the actual value of the trade-in. It alleges defendant represented his vehicle, the trade-in, to be a 1975 Chevrolet pickup truck when in fact it was a 1974 model.
Defendant answered, denying the pertinent allegations of the petition, and reconvened for $10,000 in damages resulting from plaintiff's alleged conversion of defendant's tax and license fees and for the alleged inconvenience and lost business he *749 experienced from not having a certificate of title, registration, or license plate.
After a trial on the merits, there was judgment in the amount of $3,500, in favor of defendant on his reconventional demand. Plaintiff's suit was dismissed and it was ordered to furnish defendant title to the truck he had purchased and refund to him certain amounts collected as sales tax and license fees. Plaintiff has appealed. Defendant and plaintiff in reconvention has filed an answer to the appeal seeking an increase in the amount of damages awarded him.
On May 14, 1977, defendant visited plaintiff's premises with the pickup truck he subsequently traded. He entered the new car showroom after parking the truck in front of plaintiff's premises. The remaining facts are in dispute.
Defendant testified: He was engaged in the restaurant business, had an ice house, and was a horse breeder. He stopped at plaintiff's place of business to talk to one of its sales managers, Cliff LeMaire. An offspring of a horse sold to defendant by Le-Maire was running that day at a race track near New Orleans. Defendant had done business with LeMaire, previously had purchased other vehicles from plaintiff through LeMaire, and had sent his daughter to Le-Maire to attempt to purchase an automobile. Prior to May 14, 1977 defendant's relationship with plaintiff was most satisfactory. LeMaire offered to "make him a good deal", instructed a salesman to show him trucks, and attempted to sell him one of the new trucks for $100 over cost.
Defendant further testified: He went with the salesman and selected three trucks which most appealed to him. In the process of negotiating the sale, plaintiff's employees had to make an appraisal of defendant's truck. That truck was driven to plaintiff's used car department and plaintiff's used car manager drove the vehicle for approximately 15 minutes. The used car manager and the salesman discussed the truck outside defendant's presence. At no time did defendant restrict plaintiff's access to the truck. At the new car showroom defendant selected a truck. The salesman did not tell him the value placed on his used truck by the used car manager, but only informed him what cash, in addition to the old truck, was necessary to purchase the new one.
Defendant insists he did not represent the old truck as a 1975 model, even though it was noted as such on plaintiff's appraisal sheet. The only explanation he could offer for the 1975 designation was that he had previously purchased a 1975 truck from plaintiff, and traded it for the 1974 truck in question. Some mention was made about that 1975 truck by plaintiff's employee while defendant was on its premises.
Defendant claimed he did not have the title to his truck when he visited plaintiff's premises because at that time he did not intend to purchase a new vehicle. Nor did he have the entire purchase price on his person. He made a partial deposit for which a receipt was given. The next day he returned with the old truck, its title, and a check for the difference between the deposit and the cash needed to complete the transaction. He gave the title, which clearly stated the model year of the traded truck, to plaintiff's salesman, who turned it over and requested defendant to sign it. Defendant complied, signed appropriate documents, and drove off in the new truck.
Two or three days later, defendant stated he received a telephone call from plaintiff informing him he owed approximately $1,200 because plaintiff's employees erroneously had based their valuation of his trade-in on the assumption it was a 1975 Chevrolet when in fact it was a 1974 model. In due course defendant made demand on plaintiff to process his new truck title so he could obtain a license plate and safety inspection sticker. Defendant testified, and plaintiff does not dispute, that plaintiff would only process the title application upon defendant's paying the $1,200 allegedly owed.[1]
*750 Defendant received traffic citations based on the absence of a title in Orleans, Jefferson, and St. Bernard Parishes. He also received a citation in Lake Charles, Louisiana, his son received a citation in New Orleans for improper registration, and defendant was obliged to attend court in connection with that ticket. Most, if not all, of the tickets were resolved in favor of defendant upon his presentation to the court of the facts surrounding plaintiff's actions, but at least one citation was pending at the time of trial. Defendant testified he avoided some tickets by maintaining a file in the truck with documents showing his ownership and plaintiff's refusal to obtain his title. Thus, defendant did not prove a specific pecuniary loss, but he did set forth inconvenience occasioned to him by plaintiff's refusal to process his title.
Plaintiff's witnesses testified defendant came into plaintiff's establishment to purchase a new truck; he represented the truck he was driving to be a 1975 model; and this information was written on the evaluation sheet used to establish a trade-in value. LeMaire testified defendant did not come into the establishment to discuss horses or any personal matters, and there was testimony that the salesman who consummated the sale obtained approval from a sales manager other than LeMaire. These witnesses also testified the truck traded by defendant was identical in 1974 through 1975 models and the difference in model year could only be found from tracing the motor vehicle identification number through a set of books. These books admittedly were in plaintiff's possession.
They further testified: They relied on defendant's representation of the model year, and admitted they did not use the usual procedure of checking the identification number on the truck. Their bookkeeping department eventually discovered the error and notified the sales manager. Demand was made upon defendant for $1,200, and plaintiff offered to rescind the contract, but defendant refused to comply, and plaintiff instituted this proceeding.
Finally, plaintiff's general manager explained title could not be processed because enough sales tax had not been paid. He explained the actual value of the trade-in caused the sales tax owed on the new vehicle to increase, and the amount actually paid to and held by plaintiff was the cause of the insufficiency.
After hearing the evidence, the trial judge determined as a fact that the parties had entered into a valid sale in which both sides gave their informed consent to the thing and the price both on the original sale and on the trade-in. He also concluded plaintiff was in bad faith in failing to give defendant his title to this new vehicle, which never had been registered in Louisiana, and to which plaintiff held the manufacturer's certificate of origin. He vocally chastized plaintiff in open court for the exercise of self help when a legal remedy was available.
Plaintiff seeks a judgment of $1,200, plus reasonable attorney's fees, on a quanti minoris theory. This relief is sought on the trade-in portion of the transaction, which upon close analysis partakes in part of the contract of exchange and in part of the contract of sale. However, we need not determine whether the trade-in portion was one of sale or exchange, since Civil Code Article 2667 provides that, with certain limited exceptions not present here, all provisions relative to the contract of sale apply to the contract of exchange. The relief of quanti minoris is found in that portion of the Civil Code pertaining to relief afforded a purchaser because of vices of the thing sold. Article 2541 of the Civil Code allows quanti minoris relief where there is a defect in the thing sold, and Civil Code Article 2542 allows quanti minoris relief where a thing is declared to possess a quality which it does not in fact possess.
Civil Code Article 2521, contained in the section in the Civil Code on redhibition, provides that apparent defects, such as the buyer might have discovered by simple inspection, do not give rise to redhibitory relief. That article reads:

*751 "Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices." LSA-C.C. Art. 2521.
The trial judge was of the opinion the "defect" presented by the difference in model years was one which was apparent by simple inspection, and we agree. In order to determine the correct model year, plaintiff's representatives, skilled in valuation of used automobiles and trucks, simply had to ascertain the motor or identification number, and cross reference that number with a book admittedly in plaintiff's possession. To this extent the discrepancy between model years was readily apparent and would not give rise to redhibitory relief or to an action in quanti minoris under Article 2544 of the Civil Code.[2]
There is more than substantial evidence in the record to justify the acceptance by the trial judge of defendant's statement that he did not represent the vehicle as being a 1975 truck, particularly in view of the fact that, as admitted by all parties, he did not have the certificate of title on his person on the day the transaction was agreed upon. Equally important, defendant brought in the title on the day he picked up the truck, and the model year was clearly stated on its face. Given these facts, and in view of the credibility conclusion of the trial judge, we cannot hold defendant declared the vehicle to possess a quality which it did not possess and thus afford plaintiff quanti minoris relief. Consequently, we affirm the trial judge's dismissal of plaintiff's claim.
With regard to the reconventional demand, plaintiff argues that under the Supreme Court's decision in Meador v. Toyota of Jefferson, Inc.,[3] damages for inconvenience, aggravation, distress, and mental anguish are recoverable in an action in tort but are not recoverable in contract unless the gratification of purely intellectual enjoyment is the principal object of the contract.
However, plaintiff's refusal to obtain defendant's title unless defendant paid the claimed deficiency was an exercise in self help. Louisiana law is clear that title to movables passes upon agreement as to the thing and the price.[4] This rule applies to ownership of motor vehicles,[5] even though Louisiana is a certificate of title state and merchantability of a motor vehicle depends upon proper registration and a certificate of title. Thus, the moment plaintiff and defendant agreed upon the truck and the price, title passed to defendant without further formality. From that point forward, plaintiff's action in withholding money paid to it for sales tax and licensing fees can only be viewed as a tortious conversion in an attempt to force compliance with plaintiff's demands by use of self help.
The proposition was well stated in Bostwick v. Avis Rent-A-Car,[6] as follows:
".... Regardless of the rightness or the wrongness of the plaintiff's conduct or of his action in failing to pay the rental, the defendants, nevertheless, did have a legal remedy, and it is a well-settled axiom that the Courts in this state frown upon `self-help'. There is no question but what the action of the defendants was an attempt to force the plaintiff to pay for the car. The jurisprudence of this state is now well settled that the conversion of the property of another is a tort, and that the invasion of private property can produce mental shock, anguish and humiliation. See LaFleur v. Sylvester, La.App., 135 So.2d 91; Nickens v. McGehee, La.App., 184 So.2d 271; Hayward v. Carraway, La. App., 180 So.2d 758." *752 In Hamilton v. Travelers Indemnity Company,[7] the court made the following announcements with regard to conversion:
"Conversion includes any act of dominion wrongfully asserted over the property of another in denial of or inconsistent with the owner's rights therein. Importsales, Inc. v. Lindeman, 231 La. 663, 92 So.2d 574; Marcel v. Denton, La.App., 195 So.2d 163; Edwards v. Max Thieme Chevrolet Co., La.App., 191 So. 569. Defendant's actions in removing plaintiff's automobile from its place of storage and selling it to Cook's Auto Salvage, while its ownership was still vested in plaintiff, are well within the above definition of conversion. We therefore concur in the trial court's finding that there was a tortious conversion."
The facts of the cited cases do not coincide with the facts of this case. Nevertheless, the legal principles are the same. Plaintiff's remedy was through the courts and not through the ill-conceived scheme of withholding defendant's title until, in effect, he was brought to his knees in submission. This situation is further reinforced by our finding on the merits of plaintiff's main demand.
Nevertheless, punitive damages are not allowable in Louisiana[8] and we are not able to accept the trial judge's recommendation (not contained in the judgment) that damages would be increased if title has not been transferred by the time this appeal has been heard. We do conclude the trial judge's award of $3,500 in damages to defendant on his reconventional demand was not unreasonable and was not beyond the discretion afforded him. The record reflects traffic citations in St. Bernard, Orleans, Jefferson, and Calcasieu Parishes were issued to defendant, defendant's son was issued a traffic citation with the result that defendant himself had to take time from his business activities to attend court. Defendant was stopped by police on several occasions and obviously inconvenienced by having to talk his way out of traffic citations by displaying documentation to the potential arresting officer to explain the absence of a title and registration.[9]
The parties concede the applicability of the following statement of law by this court:
"A plaintiff bears the burden of establishing each and every element of damages claimed. Cheramie v. Jones, 327 So.2d 601 (La.App. 4th Cir. 1976). Certainly it is true that when a party has suffered damages but cannot establish them with legal certainty, the courts have discretion to fix the amounts thereof. However, the latter rule has no application when the damages sought are easily proven, but such proof is not forthcoming. Cotton v. Needham, 253 So.2d 674 (La.App. 1st Cir. 1971)."[10]
(Emphasis ours).
If plaintiff in reconvention were employed at a fixed salary it would be relatively easy for him to have established in monetary figures the amount of his lost income as a definite item of damages. However, he has been self-employed for some time, and the present situation has existed for a period in excess of three years. Consequently, even if he had produced his income tax returns prior to the date of the sale for comparison with income tax returns subsequent to the date of the sale, it is doubtful any more accurate proof of lost income would have been derived than from his testimony. The trial judge is afforded discretion to set the amount of damages when they cannot be established with legal certainty,[11] and we therefore affirm the *753 $3,500 award by the trial judge. We find that amount is neither excessive nor inadequate.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] The record is somewhat unclear with regard to the actual amount demanded and how plaintiff arrived at that amount. However, plaintiff's suit prays for $1,200, and we use that figure for the purposes of this opinion.
[2] "The action for a reduction of price is subject to the same rules and to the same limitations as the redhibitory action." LSA-C.C. Art. 2544.
[3] La., 332 So.2d 433.
[4] See LSA-C.C. Art. 2439.
[5] Scott v. Continental Insurance Company, La. App., 259 So.2d 391; Transportation Equipment Co. v. Dabdoub, La.App., 69 So.2d 640.
[6] La.App., 215 So.2d 854, 857.
[7] La.App., 248 So.2d 617, 619.
[8] Killebrew v. Abbott Laboratories, La., 359 So.2d 1275.
[9] Plaintiff's actions in this case were clearly illegal under R.S. 32:705 which provides that no person shall sell a vehicle without delivery to the purchaser of a certificate of title in the name of the seller with such signed endorsement of sale and assignment as may be necessary to show title in the purchaser.
[10] Dillon v. Rice, La.App., 375 So.2d 742, 745.
[11] In pertinent part, the second paragraph of Civil Code Article 1934(3) reads:

"In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury,..." (Emphasis ours).