464 So.2d 930 (1985)
William L. QUEALY
v.
PAINE, WEBBER, JACKSON & CURTIS, INC., Donald S. Castrone, New England Gas and Electric Association and Vance Sanders Investors Funds, Inc.
No. CA-2303.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1985.
Writ Granted April 19, 1985.
*932 Phillip A. Wittmann, Jo Harriet Strickler, Douglas D. Dodd, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for defendant/appellant (Paine, Webber, Jackson & Curtis, Inc.).
*933 Perry R. Staub, Jr., Monroe & Lemann, New Orleans, for defendant/appellant (New England Gas and Electric Asso.).
John V. Baus, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for plaintiff/appellee (William L. Quealy).
Matt Greenbaum, New Orleans, for appellee (William F. Ryan).
Before LOBRANO, WARD and ARMSTRONG, JJ.
LOBRANO, Judge.
This appeal arises out of a suit for damages by William L. Quealy (Quealy) against Paine, Webber, Jackson and Curtis (Paine-Webber) and New England Gas and Electric Association (NEGEA) for the unauthorized sale of his stock. Quealy's claim is based on conversion and/or negligence.
Paine-Webber filed a third party action against William F. Ryan (Ryan), the notary public who prepared and notarized the bill of sale which purportedly transferred the stock. NEGEA filed a third party action against Paine-Webber claiming indemnification for any amount in which it might be cast on the main demand.
The lower court rendered judgment in favor of Quealy against Paine-Webber and NEGEA. The third party claim of NEGEA against Paine-Webber was upheld for full indemnification. All claims against Ryan were dismissed.

STATEMENT OF THE CASE:
Quealy was the original registered owner of 1500 shares of common stock issued by NEGEA. He kept his stock certificates in an unlocked suitcase in the room in which he lived in a hotel located at the corner of St. Louis and Decatur Streets in the City of New Orleans. After a fire, Quealy was forced to move to another hotel nearby. He took the suitcase with him but did not check to see if the certificates were still in the suitcase. He assumed they were there. It was not until several months later, between December, 1977 and February, 1978, that Quealy realized the certificates were missing after he failed to receive his quarterly dividend check. He contacted NEGEA. They informed him the certificates had been transferred.
During the time Quealy was unaware his certificates were missing, one Donald Castrone (Castrone) had purchased them from a person claiming to be Quealy. Castrone stated that the imposter approached him at the westbank automobile dealership where Castrone was employed allegedly to purchase a car. During the sales negotiations, the imposter, claiming he wanted to buy the car with cash, offered to sell to Castrone various stocks at a price below market value. Castrone contacted his attorney, Ryan, informed him of the transaction and asked for advice on the proper procedure for effecting the sale quickly.
Castrone wanted to purchase the stock and sell it for "cash" immediately. He did not want to wait the usual transaction period.
Ryan contacted a Paine-Webber broker, Morris Cali, (Cali) to inquire as to the proper procedures to transfer ownership of stock certificates by private sale and to check to make sure the stock was "clean" (not stolen).
John P. Godchaux (Godchaux), manager of Paine-Webber's New Orleans office and Charles Bailey (Bailey), operations manager of Paine-Webber's New Orleans office, conferred with Cali on the transaction. Bailey telephoned Paine-Webber's New York Transfer Dept. to determine whether Quealy's stock was subject to a "stop", a procedure that prevents transfer of a stock certificate reported as missing, lost or stolen. Bailey was informed the certificates were "clean". Godchaux and Bailey also decided that to transfer the stock for resale, Paine-Webber could rely on a notarized bill of sale, being certain that the signature on the bill of sale matched that on the back of the certificate.
Ryan, receiving this information from Cali, contacted Castrone who arranged a meeting at Ryan's home to consummate the sale. The imposter and Castrone arrived at Ryan's home between 9 and 10 *934 P.M. the night of December 8, 1977. There, they executed a bill of sale prepared by Ryan and endorsed the certificate. This transaction took place in the presence of Ryan who notarized the bill of sale.
Ryan testified that he did not know personally the person who identified himself as Quealy. He did ask for some form of identification but could not recall what sort of identification was produced. He also admitted that, although the bill of sale purported to be executed in the presence of witnesses, there were no witnesses present to the signing. Woodrow Billiot, one of the witnesses, was not at Ryan's home the evening of the sale. He signed the bill of sale as a witness the next morning at Ryan's request. Pamely Ryan, Ryan's wife, was in the house the evening of the sale, but did not participate in the transaction or watch the men apply their signatures to the bill of sale. However, she too signed as a witness.
The following morning, December 9, 1977, Ryan and Castrone went to Paine-Webber's New Orleans office and met with Cali to arrange the transfer and re-sale of the stock certificates thru Paine-Webber. To allow the trade to be made, Castrone opened an account with Paine-Webber.
Godchaux and Bailey each reviewed the notarized bill of sale and noted that it had been signed, sealed and bore the signatures of witnesses. On the strength of the bill of sale, Paine-Webber guaranteed Quealy's signature. The shares of NEGEA stock were subsequently transferred and Castrone [1] was paid. Several months later, Quealy, after not receiving his quarterly dividend check, learned the shares had been transferred.
Although Paine-Webber timely filed a request for written findings of fact and reasons for judgment pursuant to La.C.C.Pr. Art. 1917, the trial court did not file findings and reasons. Therefore, Paine-Webber, unable to determine the precise theory under which the trial court found for Quealy, specifies error as to each of the theories asserted by Quealy. Those claimed errors are as follows:
(1) The trial court improperly awarded Quealy recovery against Paine-Webber in connection with the stock sale.
(2) The trial court erred in refusing to dismiss Quealy's case when he did not appear for trial and in ordering the parties to the plaintiff's residence to take his trial testimony outside of the presence of the trier of fact.
(3) The trial court improperly awarded Quealy the value of the stock as of the date of trial when the proper measure of damages was the value of the stock at the date of the alleged conversion or negligence.
(4) The trial court improperly gave Quealy a double recovery by awarding him dividends attributable to the stock as well as interest on the value of the stock.
(5) The trial court improperly awarded Quealy general damages because the recond contains no admissible evidence to support an award of general damages, and in any case, general damages are improper under the facts of this case.
(6) The trial judge erred in awarding judicial interest attributable to periods during which Quealy failed to press his case.
(7) The trial court improperly dismissed Paine-Webber's third party demand against Ryan.
NEGEA appeals the judgment asserting the same errors as numbers one thru six above and adding as their specification of error the following:
(8) The trial court erred in failing to include an award of costs and attorney's fees incidental to the judgment in favor of NEGEA on its third party demand against Paine-Webber.

SPECIFICATION OF ERROR 1.
In order to constitute a conversion, there must be either some repudiation *935 of the owner's rights, some exercise of dominion over his property inconsistent with such right, a wrongful taking or detention, an illegal assumption of ownership, or an illegal user or misuser; the essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner; temporary deprivation is sufficient and in consequence it is of no importance what subsequent application was made of the converted property or that defendant derived no benefit from his act. Importsales v. Lindeman, 231 La. 663, 92 So.2d 574 (1957); Deshotels v. Statewide Trailer Sales, 333 So.2d 259 (La.App. 1st Cir.1976).
In addition, one who acts with another in keeping property from its rightful owner is guilty of conversion, and the fact that he acted as agent is no excuse. Edwards v. Max Thieme Chevrolet Co., 191 So.2d 569 (La.App. 2nd Cir.1939); writ denied, October 30, 1939.
It is not a prerequisite of conversion that only parties who have taken possession, in the sense of ownership, of the thing converted, can be guilty of conversion. Conversion includes any act of dominion wrongfully asserted over the property of another inconsistent with the owner's rights. Hamilton v. Travelers Indemnity Company, 248 So.2d 617 (La.App. 3rd Cir.1971). The act of dominion or detention constitutes conversion particularly when the detention or dominion continues to occur after demand for possession has been made by the owner. It matters not whether the converter bases his refusal on his own right or assumes to act for another. Edwards v. Max Thieme Chevrolet, supra. Demanding proof of ownership from the rightful owner is of no consequence. Deshotels, supra.
Applying the above law to the instant case, we find that Paine-Webber acted in a manner inconsistent with Quealy's property rights. Paine-Webber guaranteed the signature of an imposter. They did so without any independent verification and in so doing exercised the necessary dominion over the stock so as to constitute a conversion. In guaranteeing a signature, Paine-Webber warranted that the signature was genuine, that the signer was an appropriate person to indorse and the signer had legal capacity to sign. La.R.S. 10:8-312.
Quealy's stock would not have been transferred had Paine-Webber not guaranteed the signature. We hold that they are liable for conversion, as well as negligence. Their actions violated a basic duty of care in handling securities.
Likewise, we hold that NEGEA, after learning of Quealy's forged signature, was guilty of conversion in failing to retransfer the stock. La.R.S. 12:630 provides in part:
"If the indorsement or delivery of a certificate,
(1) Was procured by fraud or duress, or
* * * * * *
If the delivery of a certificate was made (3) Without authority from the owner
* * * * * *
... the possession of the certificate may be reclaimed, and the transfer thereof rescinded ..."
NEGEA argues that it was a good faith purchaser and therefore was not subject to the provisions of section 630. We disagree. As the issuer of the stock they had the obligation to return it when learning of the forgery, and having failed to do so exercised the necessary dominion to constitute a conversion. See, Leurey v. Bank of Baton Rouge, 131 La. 30, 58 So. 1022 (1912).

SPECIFICATION OF ERROR 2.
Paine-Webber asserts that Quealy's case should have been dismissed when he failed to appear on the day of trial. Quealy's attorney stated to the trial court that he had personal knowledge that Quealy was too ill to attend the trial. The trial court recessed the trial and ordered all counsel and a court reporter to proceed to Quealy's residence to take a written and videotape deposition of his testimony. Paine-Webber argues the trial judge had no authority in *936 law to order Quealy's deposition be taken in lieu of his live presence at trial.
Article 1431 of the La.Code of Civil Procedure provides in part:
"If the court is satisfied that the perpetuation of the testimony may prevent a failure or delay of justice it shall make an order designating or describing the persons whose deposition may be taken ..."
In addition, Article 1450 provides in part:
* * * * * *
"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (c) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; ..."

* * * * * *
Since the above articles clearly establish that Quealy's deposition was permissible, the question becomes whether the trial judge had authority to recess the trial to allow the deposition be taken.
The answer to this inquiry lies in Code of Civil Procedure Article 1631 which reads in pertinent part:
"The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done." (emphasis added).

* * * * * *
The trial judge gave all parties the option to move for a continuance. None did.
Louisiana law vests trial courts with authority to order the perpetuation of testimony, to order the deposition of a sick witness and to order any act that expedites the trial. C.C.Pro. Articles 1431, 1450, 1631; Richardson v. DeVille, 204 So.2d 411 (La.App. 3rd Cir.1967). We find no abuse of discretion on the part of the trial court in ordering Quealy's deposition.

SPECIFICATION OF ERROR 3:
Paine-Webber asserts the trial court's award to Quealy of $32,437.50 for the loss of the NEGEA stock, a figure based on the value of the stock as of December 13, 1983, the day before trial, was error as the measure of damages in conversion cases is the value of the property converted at the time of the conversion, citing Boisdore v. International City Bank & Trust Co., 361 So.2d 925 (La.App. 4th Cir.1978), writ denied, 363 So.2d 1384.
We agree with Paine-Webber that this is the general rule. However, our Supreme Court has recognized that the general rule when dealing with securities traded in an organized market may not be an adequate remedy. In Leurey v. Bank of Baton Rouge, supra, the Court stated:
"There are, no doubt, some transactions in stocks, in which to hold a defendant liable only for the value of the stocks at the date of their actual conversion would afford a very inadequate remedy; as for instance, where one, acting through a broker, buys stocks with the intention of holding them for a rise in the market and the broker [converts them] so that the [stockholder] loses the opportunity of availing himself of the rise that he expected,..." Id. at 1026. (emphasis added)
This reasoning is well founded since our law strives to grant a plaintiff full recovery. La.C.C. Arts. 1995, 2315.
Not all converted property depreciates with time. In the instant case, the stock was not a wasting asset. To the contrary, it was designed to appreciate for investment purposes. Quealy testified that he lived off the dividend checks and intended to permanently hold the stock. Thus, the measure of damages grows not only from the wrongful seizure but its continued illegal detention. See, Hernandez v. Harson, 237 La. 389, 111 So.2d 320 (La. 1959). Even if Quealy had not anticipated an increase in value, the evidence is clear that he nevertheless intended to permanently hold the stock. If the trial court had applied the general rule and awarded only the value of the stock at the time of *937 the conversion,[2] Quealy would be prevented from repurchasing an equal number of NEGEA stock. He would not be made whole and we conclude that the remedy would "be very inadequate". Leurey, supra. We find no error nor abuse of discretion on the part of the trial court in awarding the value of the stock as of the day prior to the trial.

SPECIFICATION OF ERROR 4.
Paine-Webber asserts the trial court erred in awarding Quealy the amount of the lost dividends from the date of conversion to the day of trial. In support of this claim, they cite the Supreme Court's holding in Leurey, supra. The Leurey court awarded only interest on the value of the stock from the date of conversion and excluded dividends from plaintiff's recovery. The court, however, recognized that an award of lost dividends is in some case appropriate. In Leurey, the facts supported the finding that plaintiff's father would have sold the stock at the time it was converted. In the instant case, the evidence does not support such a finding. Quealy's intention was to permanently hold the stock.
We find no abuse of discretion in the trial court's award of lost dividends.
We do find error, however, in the award of interest on the value of the stock. As stated above, the intent of the law is to grant a plaintiff full recovery. The judgment should place plaintiff in the same position he occupied prior to the tortious act. In this case Quealy was granted the full value of his stock as of the date of trial, plus he was reimbursed the dividends he lost because of the conversion. By also awarding him interest he is placed in a better position than he occupied prior to the loss. We therefore deny the interest awarded on the value of the stock.

SPECIFICATION OF ERROR 5:
Paine-Webber asserts there was no evidence to support the trial court's award of general damages.
This court in the case of Banner Chevrolet Inc. v. Kelt, 402 So.2d 747 (La. App. 4th Cir.1981) has recognized and adopted the principal that "... the conversion of the property of another is a tort, and that invasion of private property can produce mental shock, anguish and humiliation." At 751. Malice or bad faith on the part of the converter is not a prerequisite. Banner Chevrolet, supra; Escat v. National Bank of Commerce in New Orleans, 284 So.2d 832 (La.App. 4th Cir.1973).
Quealy's testimony as to the damages he sustained is contained in his deposition and is part of the record. Without reiterating all of Quealy's testimony, suffice it to say that he sustained a drastic decrease in income. He was forced to live on a very meager veteran's pension which he testified was not enough to meet his living expenses.
Our Supreme Court has repeatedly stressed that a trial court is vested with considerable discretion in awarding damages, and unless there has been an abuse of discretion an award will not be disturbed on appeal. Williams v. Williams, 203 So.2d 91 (La.1967).
We find no error in the trial court's award of general damages.

SPECIFICATION OF ERROR 6:
Paine-Webber asserts that the trial court's award of judicial interest from the date of demand is error because it includes a one year and five month period during which Quealy failed to prosecute his case. La.R.S. 13:4203 states in pertient part:
"Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, `ex delicto', which may be rendered by any of the courts."
*938 In support of their argument, Paine-Webber cites the case of Merchant v. Montgomery Ward and Company, 83 So.2d 920 (La.App. 1st Cir.1955). In Merchant, plaintiff was involved in two suits against the same defendant. After prevailing in the second suit, plaintiff alleged his interest should be measured from the date of his demand in the first suit. The Court construed La.R.S. 13:4203 as providing interest somewhat in the nature of a penalty and strictly construed the statute not to include the date of demand in the federal court action because the delay between the filing of both suits was not occasioned by any action of defendants. There is nothing in the record which indicates that Quealy's actions alone caused the delay nor is there any evidence which shows Quealy unscrupulously or unfairly delayed the action.[3]
The record shows that various commonly used legal strategies and tactics were employed by all parties to the litigation which resulted in the delays before trial.
We find no error in the trial court's award of judicial interest from date of judicial demand. We note, however that the interest is to be computed on the general damage award, not on the value of the stock (See Error No. 4, supra). Nor was it error to award interest on the dividends commencing on the dates they were payable.

SPECIFICATION OF ERROR 7:
Paine-Webber asserts that it was great injustice for the trial court to dismiss their third party demand against Ryan, the notary public. They accuse Ryan of the following acts or omissions in notarizing the bill of sale:
(1) Ryan failed to exercise the precaution of an ordinarily prudent businessman in assertaining the identity of persons appearing before him;
(2) Ryan should not have relied on Castrone's introduction of the imposter;
(3) The circumstances suggest Ryan should have been suspicious of the sale;
(4) Ryan obtained the signatures as witnesses of two persons who had not witnessed the transaction.
The evidence shows that Ryan knew Castrone very well and would see him several times a month either on a business or social basis. Ryan had no reason to suspect any wrongdoing at the time he notarized the bill of sale. He testified he was introduced to Quealy (imposter) by Castrone, and did seek some identification, although he could not remember exactly what was shown to him.
The standard of care of a Notary in instances such as this was clearly stated in Howcott v. Talen, et al., 133 La. 845, 63 So. 376, (La.1913) wherein our Supreme Court stated:
"... so long as he [notary] exercises the precaution of an ordinarily prudent businessman in certifying to the identity of the persons before him, it may be doubted whether he has any other function to discharge;" Id. 63 So. at 379.
A careful review of the record leads us to conclude that there was sufficient evidence for the trial court to conclude that Ryan met this standard of care. We find no manifest error in that conclusion.
Furthermore, the fact that the witnesses to the act were not present at the time of its execution has no bearing on the issue of Ryan's alleged negligence, as their failure to be present merely changes the sale from an authentic act to one under private signature.

SPECIFICATION OF ERROR 8.
NEGEA argues that the trial court erred in failing to include an amount for costs and attorney fees incidental to the judgment in its favor on its third party demand against Paine-Webber. They argue that the guarantee of the signature by *939 Paine-Webber was a warranty that was breached, and thus resulted in a loss. We agree.
La.R.S. 10:8-312 provides:
"(1) Any person guaranteeing the signature of an endorser of a security warrants that at the time of signing (a) the signature was genuine; and (b) the signer was an appropriate person to endorse ..."
Having guaranteed the signature on the forged certificate Paine-Webber is liable for any loss from the breach of their warranty. Included therein is NEGEA's attorney fees and costs in defending this suit. Since the lower court did not set an amount for this award, we remand for this purpose.
For the foregoing reasons, the judgment of the lower court is amended to exclude the legal interest awarded on the value of the stock, reversed as to the failure to award NEGEA attorney fees and court costs. In all other respects the judgment is affirmed.
AMENDED IN PART, REVERSED AND REMANDED IN PART, AND AFFIRMED IN PART.
ARMSTRONG, J., dissents in part.
ARMSTRONG, Judge, dissenting in part.
In my opinion reliance on LSA-R.S. 12:630[*] is misplaced in this instance. LSA-R.S. 12:630 merely grants a right to reclaim possession of the certificates of stock or rescission of the transfer of the stock. The fact that LSA-R.S. 12:630 provides for such an action did not create a duty on NEGEA's part to return the stock once it learned of the forgery. In addition we note that LSA-R.S. 12:630 makes no provision for monetary damages.
However, I do agree that NEGEA's actions constituted a conversion in that their failure to return the stock once they learned of the forgery constituted dominion over the property inconsistent with the rights of ownership. Thus, NEGEA is liable for the conversion of the stock.
NOTES
[1] Defendant, Donald S. Castrone, filed for relief under Chapter 7 of the Bankruptcy Code (11 U.S.C. Sec. 701 et seq.) prior to trial, and did not take part in these proceedings.
[2] On the date of the conversion, the value of Quealy's stock was $17.25 per share for a total of $25,875.00.
[3] See, Brown v. Aggie & Millie, Inc., 485 F.2d 1293 (5th Cir.1973).
[*] Rescission of transfer.

If the indorsement or delivery of a certificate,
(1) Was procured by fraud or duress, or
(2) Was made under such mistake as to make the indorsement or delivery inequitable; or
(3) Without authority from the owner, or
(4) After the owner's death or legal incapacity, the possession of the certificate may be reclaimed and the transfer thereof rescinded, unless:
(a) The certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful, or,
(b) The injured person has elected to waive the injury, or has been guilty of laches in endeavoring to enforce his rights.
Any court of appropriate jurisdiction may enforce specifically such right to reclaim the possession of the certificate or to rescind the transfer thereof and, pending litigation, may enjoin the further transfer of the certificate or impound it.
Repealed by Acts 1978, No. 165, § 6, eff. Jan. 1, 1979. See, LSA-R.S. 10:8-315.